JOHN SOPER

v.

DAVID H. BILDER.

[Decided April 19th, 1917.]

1. Although contracts between attorney and client for contingent fees are sustained by the courts, they will be sustained only to the extent of securing to the attorney a reasonable compensation.

2. Evidence *held* to show that the client fully understood the nature of her act in executing a contract for a contingent fee.

3. Where property was conveyed to an attorney in pursuance of such a contract, and the client by several acts ratifies the contract, a devisee of such property cannot question such completely executed transaction in the absence of fraud.

4. The elements which may be considered in fixing compensation for legal services considered.

On bill, &c.

*Mr. Donald Lefferts* and *Mr. Peter Backes,* for the complainant.

*Mr. William B. Gourley,* for the defendant.

LANE, V. C.

The bill was filed to set aside a deed made by one Mary S. F. Sisco, now deceased, on December 4th, 1915, conveying to David H. Bilder, the defendant, an attorney and counselor-at-law of this state, an undivided one-third interest in the premises particularly described in the bill, located in Lodi, in Bergen county. Prior to November 24th, 1914, Mary S. F. Sisco had been a defendant in a suit pending in this court brought by Mary Soper, her mother, to set aside a deed made by Mary Soper to Mary S. F. Sisco on March 30th, 1897, covering the same property referred to in the Bilder deed. This deed contains a provision requiring the daughter to support the mother during her life.

From 1897, to a short time before the filing of the bill, in August, 1913, the daughter had supported the mother, who at the time of filing the bill was ninety-two years old, and had spent considerable sums of money on the property. The case came on for hearing before an advisory master; some four hundred pages of testimony were taken. The advisory master found against the defendants, and a decree was made setting aside the deed without any provision for reimbursement to the defendants of the moneys expended by them. After the decree had been signed the cause was allowed to sleep for some time, and then proceedings were taken against Mary S. F. Sisco for contempt in failing to comply with the decree which had directed her to reconvey the premises. At that juncture, and on or about November 24th, 1914, Mary S. F. Sisco came in contact with the defendant, David H. Bilder, with a view to retain him in her difficulty. He advised with her and made an examination of the record. From his examination he discovered that the *lis pendens* had been filed before the bill, with the result that, although more than three months had elapsed since the making of the decree, there was no question but that an appeal could be taken. Bilder advised an appeal. Her previous counsel had advised in writing against it. On November 30th, 1914, an order of substitution was made. Bilder had received $100 on November 22d, 1914, for services in the contempt matter. On December 9th, 1914, an agreement was made between Mrs. Sisco and Bilder & Bilder, attorneys, of which firm David H. Bilder was a member, providing, substantially, that Bilder & Bilder would take such proceedings as might seem necessary or proper for the protection of the rights of Mrs. Sisco in the court of errors and appeals, also in the contempt proceedings and in an ejectment suit then pending in the supreme court; that as compensation Bilder & Bilder should be entitled to receive a sum equal to one-third of any and all recovery which Mrs. Sisco or her husband should be awarded or receive in the premises either by suit, settlement, compromise, or otherwise, and that in the event that the deeds of conveyance made by Mary Soper to Mrs. Sisco should not be set aside or declared invalid, then that Bilder & Bilder should receive one-third of the value of the lands conveyed by Mary

Soper to Mrs. Sisco, said one-third to be computed upon the value of said land as the same should be at the time of the said determination. In case of non-success, Bilder & Bilder were to receive nothing. The disbursements for printing on appeal, and the deposit required upon appeal, were to be paid by Mrs. Sisco and her husband. The agreement is acknowledged and testimony given by the master before whom it was acknowledged is to the effect that the agreement was read over and explained to Mrs. Sisco and her husband before they signed and acknowledged it. Counsel then prepared the very voluminous petition of appeal that was filed, and also briefs. His original brief and brief in reply consists approximately of sixty pages; the brief of the respondent of seventy pages. The briefs indicate upon their face work of the highest standard. On March 23d, 1915, the cause was submitted to the court of errors and appeals on briefs. It was decided, on November 15th, 1915, in favor of Mrs. Sisco in an opinion delivered by Mr. Justice Trenchard (*85 N. J. Eq. 165*). The opinion covers some ten pages of the report. Nine judges voted to reverse; five to affirm. Whatever my personal opinion may be as to the apparent equity of Mrs. Sisco, at least for reimbursement for moneys which she had advanced upon the faith of the deed, the conclusions of the advisory master and the opinion of the court of errors and appeals, and the fact that five judges dissented, indicates beyond cavil that the case was most difficult, and that Mrs. Sisco when she came to Bilder & Bilder was in a desperate position. This very fact, of course, increased the burden of the duty upon the defendant toward the client. The necessity could not be availed of to get from her an unconscionable contract. The situation demanded the very highest quality of legal ability and most assiduous application, and it received both to a marked degree. Upon learning of the determination of the court of errors and appeals the Siscos telegraphed counsel congratulating them. On December 4th, 1915, Mrs. Sisco and her husband, in pursuance of the agreement of settlement, and to recompense counsel, made the deed now in question. The master before whom this deed was executed testifies that Mrs. Sisco understood fully what she was doing. On March 8th, 1916, Mrs. Sisco executed her last will and testa-

ment, naming David H. Bilder as executor, and the present complainant residuary legatee and devisee. On April 5th, 1916, and while Mrs. Sisco was confined to the hospital at Passaic during her last illness, the deed was recorded. On May 31st, 1916, she died, and on August 4th, 1916, the present bill was filed. After the determination of the court of errors and appeals there were further hearings before the advisory master for the purpose of fixing the amount which should be paid by the Siscos for the support and maintenance of the complainant, Soper, which she should have previously received, and also for future support. There were at least two formal hearings before the advisory master. Most excellent briefs were submitted. The result was that the amount asked by the complainants, which was, in the neighborhood, I think, of $4,000, was reduced to approximately $1,800, and the amount of future support asked for, to wit, $25. was reduced to $10. Mrs. Soper then died. An order embodying the conclusions of the advisory master was entered after the death of Mrs. Sisco, without reviving the cause, *nunc pro tunc,* as of the day of the argument. A copy of the contingent agreement was found among the papers of Mrs. Sisco. There is no proof that at the time of the making of the contract for compensation Mrs. Sisco was under any physical or mental disability. Indeed, the complaint derives his title through a will made three months after the deed was executed. The case is absolutely barren of proof that any misrepresentations as to her rights or as to the value of the property were made to her. It is conceded by the defendant that the property is worth in the neighborhood of $12,000. It is claimed by the complainant, and he is supported by the testimony of one witness, that it is worth in the neighborhood of $18,000. Two witnesses for the defendant substantiate the twelve-thousand-dollar valuation. It is probable that the real value lies somewhere between the two extremes. But in my view of the case it is not necessary for me to determine precisely its actual value.

The property is unimproved, in the small borough of Lodi; there is no evidence of a present demand for it. It will have to be improved, filled in before it can be made of use. The

amount which may finally be received for it is highly problematical.

Contracts which provide that an attorney should receive a certain proportion of the proceeds of litigation where, as in this case, the amount to be received cannot be approximated, and in case of failure should receive nothing, are to be most strongly, in my opinion, condemned, and I think that it is immaterial whether the agreement was made before or after the technical relation of attorney and client began, notwithstanding the inference that might be drawn to the contrary from the language of Vice-Chancellor Pitney in *Adams* v. *Schmitt, 68 N. J. Eq.* (at *p. 178*). The evils to which such contracts lead far outweigh any advantage which there may be in permitting them. The moment an attorney enters into a contract of this kind he ceases to be in a position where it can be said that he can in all cases properly advise his client. I will point out but one example. If a proposition of settlement is made of a doubtful claim it may be highly to the interest of the client to compromise. The attorney, on the other hand, gambling not with his own property, but merely interested to the extent of his services, may think it highly desirable that the cause should be prosecuted with a view to getting a larger amount for his services, and, as in some cases which have come to my knowledge, the client may finally lose his entire property, which he cannot afford to do, and the attorney merely the value of his services, which, presumedly, he can afford to lose else he never would have entered into such a contract. On the contrary, it may be highly desirable from the client's standpoint that the cause should be prosecuted to determination, and the attorney may think it advisable from his standpoint, in order to immediately reap the reward of his contract to settle. I am not intimating that there was any such condition in this case. What I say is that the possibility of such a situation arising is such that by entering into such a contract the attorney puts himself in a position where he can no longer act as he should, solely with a view to the interest of his client. There is no one thing that has more strongly tended to get the bar in disrepute with the general public than this class of contracts. Such contracts, however, have been sustained by the courts of

this state. *Hassell* v. *VanHouten, 39 N. J. Eq. 105* (at *p. 109*);
*Wilson* v. *Seeber, 72 N. J. Eq. 523.* From a consideration, how-
ever, .of *Lynde* v. *Lynde, 64 N. J. Eq.* (at *p. 749*); *Brown* v.
*Bulkley, 14 N. J. Eq.* (at *p. 458*); *Crocheron* v. *Savage, 75 N.
J. Eq. 598;* *Porter* v. *Bergen, 54 N. J. Eq. 405;* *Wagner* v.
*Phillips, 78 N. J. Eq. 33;* *Johnston* v. *Reilly, 68 N. J. Eq.* (at *p.
150*), it seems to me that upon such an agreement being called
in question by a client it will be sustained only to the extent of
securing to the attorney reasonable compensation under all the
circumstances of the case, which is but another way of saying
that the contract under such circumstances will be entirely dis-
regarded. In computing what is reasonable compensation many
elements must be taken into account. There is no yardstick by
which the value of legal services can be measured; no rate per
diem or percentages can be employed with justice to both par-
ties." The legal ability of the attorney, the amount of work
which he does, the skill with which he does it, and, of much im-
portance, the amount involved, and the success of his efforts.
There may also be considered the contingency that in case he is
unsuccessful he will receive nothing, and the fact, if it be a fact,
that the fund was created through the efforts of the attorney.

I have already commented upon the circumstances surround-
ing this particular case. As I construe the contract, and the
deed must be considered as merely carrying into effect the pro-
visions of the contract under it, if it be valid, the attorney is
entitled to one-third the value of the property after deducting
all the costs of litigation, approximately six or seven hundred
dollars which have been paid by Mrs. Sisco, the amount which
Mrs. Sisco was decreed to pay to Mrs. Soper, and, if Mrs. Soper
had lived, an amount equal to the present value of the future
payments which Mrs. Sisco had to make for the support and
maintenance of Mrs. Soper, for it is this net amount which rep-
resents the net avails to Mrs. Sisco. I think the intent was that
the one-third should be of the net avails. The result will be,
therefore, that the attorney at some future time when this prop-
erty is sold may receive something in the neighborhood of be-
tween $3,000 and $3,500 if the property be worth $12,000; that

he takes his chance on receiving it in this method must also enter into consideration.

I am not obliged, I think, to determine what action this court would take upon such a contract if it were questioned by the client. Clients have a right to make contracts with their attorneys; they have a right to make gifts to their attorneys. Originally, compensation of counsel was by way of gift. Such contracts will be scrutinized with great care, but if it fairly appears that the client voluntarily and intentionally made such a contract there is no reason why it should not be sustained, certainly as against all except the client, unless peculiar circumstances exist. Mrs. Sisco had the absolute power to do what she did do. Is it to be presumed that were she alive now that she would repudiate? In the face of the circumstances here existing, I would have to find that the amount which the attorney will receive is so far in excess of any reasonable amount which he could demand that it is to be conclusively presumed that had the client understood the circumstances she never would have made the contract; that it results in such an over-reaching as that she cannot be presumed to have intended it, or that there was some fraud, or that she would not have made it except induced by her precarious condition, coupled with her inability to pay cash, or that had she been able to pay cash she would have preferred to pay reasonable compensation rather than to enter into such a contract. I do not think I am justified in so finding. That Mrs. Sisco fully understood the effect of what she was doing I think is demonstrated by the testimony. She ratified the contract more than a year after its making by delivering the deed. She reaffirmed her confidence in Bilder and her acquiescence in what had been done by three months after the making of the deed making her will in which she made Bilder her executor. She kept the contract among her papers, indicating clearly that there was no concealment, and that she knew what had been done. Under the circumstances, I do not think that it lies in the mouth of the present complainant who obtained his title by gift of his sister to question this completely executed transaction. I do not want to be understood as holding that the court will not in any case after the death of a client ex-

amine such contracts. If there was any evidence indicating that during her life Mrs. Sisco had expressed dissatisfaction, or that there was the least concealment or over-reaching, and if there was not the positive evidence of ratification, the case might be different. Each case must be determined on its own facts.

Counsel for the complainant suggests a compensation of $500 would be adequate in a case of this kind. I think not, even if the client was able and willing to pay cash. The services were worth much more than any such sum, and I do not think that the difference between their fair value and the amount that the attorney is to receive is so great as to practically create the presumption of fraud.

I will advise a decree declining to set the deed aside, but the pleadings may be so framed as to permit a decree defining the rights of the attorney under the deed as I have herein expressed. No costs to either side.