This bill seeks an injunction against the prosecution by the defendant of four suits at law against the several complainants, all of which suits are for the recovery of attorney's fees alleged to be due to the defendant from the complainants under the provisions of a certain contract of employment between the members of an association of independent jitney owners of whom complainants were a part, and the defendant. Immediately upon the filing of the bill an order to show cause with restraint was issued and on the return of that order the restraint thereby imposed was continued pendente lite by further order consented to by counsel for the defendant.
This controversy grows out of the following facts which I find from the evidence submitted at the hearing: In the early part of 1924 there were forty-odd independent jitney men operating buses on what was known as the Springfield avenue route in the city of Newark. There was a spirited competition between the Public Service Corporation and the independent jitney men for control of the jitney business on this route and the Public Service Corporation was making a determined effort to acquire a sufficient number of the independent buses and their franchises to control the situation. Prior to this time a merry war had progressed between the independents and the Public Service Corporation which had resulted in relief and protection being sought by the independents through the legislature. The defendant had been a member of the New Jersey assembly at that time *Page 200 
and had interested himself actively on behalf of the independents and later became counsel for many of the independent lines in Newark and vicinity. He had achieved considerable success in his work and had some reputation for accomplishment on behalf of the independents. The Public Service Corporation at the time referred to, however, had begun to make serious inroads on the ranks of the independents, and in the early part of 1924 had succeeded in purchasing at one time twenty-two of the forty-odd auto buses and franchises on the Springfield avenue route. The highest price paid for any one of those buses and franchises up to that time was $9,000. This had thrown consternation into the ranks of the independent bus men and particularly those engaged on the Springfield avenue route, and they feared that they would be forced to sell out to the Public Service Corporation at what they considered inadequate prices. They began to look around for means to restore the morale of the independents and resist the Public Service onslaught, and with this end in view sought the advice of the defendant. The Springfield avenue jitney men had already organized a corporation which had built a large garage for the housing of the buses of the members and operators on the Springfield avenue lines. The president of that corporation, Mr. Lines, representing the remaining jitney men operating on the Springfield avenue route, of whom there were nineteen, was authorized to consult with Mr. Franklin, which he did, and as a result thereof Mr. Franklin attended several meetings of the association. He was told by the jitney men that they desired to effect some sort of agreement among themselves which would prevent any individual member of the association from selling his bus and franchise to the Public Service Corporation without the consent of all. While the garage was owned by the corporation, of which all of the forty-odd jitney men were stockholders, the buses and the franchises were owned by the individuals themselves, the corporation having no interest whatever therein. The defendant advised the remaining nineteen members that the only safe way to accomplish their object was to turn over their buses and franchises to the corporation at an appraised value and take in return therefor stock *Page 201 
of the corporation to the amount of the appraised value of each bus and franchise. This the jitney men refused to do because of their lack of trust in one another. As a substitute for this arrangement the defendant prepared an agreement between the corporation, of which these jitney men were stockholders, officers and directors, and themselves individually, in which it was provided that each and all of said jitney men would sell their respective buses, good will and franchises to the corporation at any time before April 25th, 1925, for a certain consideration therein mentioned to be paid in stock and notes of the corporation, said purchase price to be determined by appraisers, and the transfer of the franchises to be conditioned upon the approval of the municipalities concerned and the public utility commission. The corporation agreed to purchase said buses and franchises based on the terms set out in that agreement. The sole purpose of this agreement was to hold the remaining nineteen Springfield avenue jitney men together in an organization to resist the efforts of the Public Service Corporation to purchase individual buses on that line, and with a view to raising the selling price of the remaining buses and franchises to an amount equal to their real worth. It was a foregone conclusion at that time that eventually the remaining jitney men on this line, or many of them, would be obliged to sell, but they did not want to sell at the prevailing prices. At the time of Mr. Franklin's engagement the jitney men were without funds to pay him a fee and asked him to represent them for a contingent fee, and after negotiations it was agreed between them and the defendant that Mr. Franklin should receive from each individual jitney man, as compensation for his services, five per cent. of the selling price of the individual buses in excess of the sum of $11,000, when sold, providing that this commission should not apply to sales to the corporation, but should apply to resales by the corporation to the public service or other purchaser. This agreement was in writing and was signed by the defendant and by the remaining nineteen bus men individually. There was a full and complete disclosure and explanation by the defendant of all facts and circumstances pertinent to this arrangement; *Page 202 
there was no deception or misrepresentation, the parties dealt at arm's length, and the complainants, on their own testimony, entirely understood the terms and provisions of the agreement and were satisfied therewith. The agreement between the corporation and the jitney men expired by its own limitation on April 25th, 1925. Mr. Franklin explained to his clients that the agreement could be canceled by consent prior to the expiration of that period. He also advised them that in his opinion the agreement of sale could be enforced by the corporation against the individual parties thereto. Following the defendant's employment he was very active in consulting with and advising his clients and appeared on numerous occasions before municipal governing bodies and officers, the public utility commission and in court. He notified the Public Service Corporation and all who had anything to do with the purchase of buses on the Springfield avenue route, or who in his opinion might in the future be concerned in the purchase of additional buses, that the contract with the corporation and the individual jitney men had been entered into, serving them with copies of that contract. This was for the purpose of discouraging the Public Service Corporation from prospective attempts to purchase the remaining buses. In the fall of 1924 three of the remaining nineteen bus men, notwithstanding their agreement with the corporation, sold their buses to the Public Service Corporation, and immediately upon learning of this fact the defendant filed three separate bills in the court of chancery against them, seeking an injunction to prevent the consummation of said sales. Immediately thereafter the defendant filed another bill in this court on behalf of the corporation against all of the remaining bus men, seeking an injunction to prevent their violation of the agreement of sale. The defendant continued to represent the jitney men and to perform such services as were required of him, both generally and in connection with the four suits in this court, until some time in the spring of 1925, when he was asked to consent to the substitution of another solicitor in his stead, which he readily agreed to do. The cases were set down for final hearing in June of that year. The testimony of the *Page 203 
complainants is to the effect that the defendant never refused to give them a substitution of solicitors. It appears, however, that when such substitution was given it was agreed between the defendant and the remaining jitney men that his withdrawal from these suits should not affect his right to compensation under the agreement providing for the payment of a five per cent. commission as hereinabove referred to. That understanding was reduced to writing and signed by all of the jitney men. It was not obtained by any fraud, deception, misrepresentation, breach of trust or unfair methods, and was, in my judgment, entirely proper under the circumstances. At the final hearing on the suits against the three jitney men who had sold their buses in violation of the agreement with the corporation, the bills were dismissed, but for what reason the files do not disclose, as no opinion was filed by the court. The suit of the corporation against the remaining jitney men was dismissed by consent. It is alleged by the complainants that the three suits first referred to were dismissed because the contract between the corporation and the individual jitney men was illegal; but that is not to be assumed from the dismissal of the bills. It may have been legal and still unenforceable. The decree dismissing these bills was entered on the 25th day of June, 1925. Preliminary restraint had been imposed at the time these suits were instituted and continued until final decree. As already suggested, this contract, the enforcement of which was sought by these bills, expired of its own limitation on April 25th, 1925. At the time of the substitution of attorneys the highest price paid by the Public Service Corporation for any of the Springfield avenue buses was $13,500, this being the price paid, or agreed to be paid, to the three offending jitney men against whom suits were instituted. By this time, however, the morale of the independent jitney men had been restored and they presented a rather determined front against the Public Service Corporation forces. The effectiveness of the organization which the defendant accomplished by means of this agreement is indicated by the fact that the four complainants in this bill subsequently sold their buses to the Public Service Corporation for $30,000 each, upon which sale the *Page 204 
defendant demanded his five per cent. commission under his compensation agreement, which, being refused, the suits at law were instituted. The demanded payment is resisted on the ground that the compensation agreement was unconscionable, and that because of the confidential relation between attorney and client it is presumed to have been fraudulent; that it was actually so; that its provisions were unfair and that at most the defendant can claim commission on nothing in excess of the price at which buses were being sold at the time of the substitution of attorneys hereinbefore referred to, viz., $13,500. This court is asked to fix the reasonable value of the services performed by the defendant, which reasonable value the complainants offer to pay.
The law applicable to this case is not in dispute. It is admitted on the part of the defendant that the burden is upon him to show the reasonableness of his charges and that such an agreement as he obtained was obtained upon full disclosure; that its terms are fair and just and that the complainants had a right to dispense with his services at any time they saw fit. It is also admitted that the charges of an attorney are always subject to scrutiny and review in this court, and that this court has a right now to determine the fairness and reasonableness of the contract, the adequacy and propriety of the compensation therein provided for, and the defendant joins in the request that this be done. That such is the law in this state cannot be doubted.Weizezahl v. Huber, 39 N.J.L.J. 334; 6 Corp. Jur. 973; Brown
v. Bulkley, 14 N.J. Eq. 451; Schomp v. Schenck,40 N.J. Law 195; Porter v. Bergen, 54 N.J. Eq. 405; Kelley v.Schwinghammer, 78 N.J. Eq. 437; Raimondi v. Bianchi, 100 N.J. Eq. 448.
On the other hand, it may be said that this court's conscience may as easily be shocked by an attempt to avoid the payment of an honest obligation as by the procuring of an unfair contract.
While it is proper for this court to fix the reasonable fees to be paid an attorney by his client where charges of fraudulent or unfair conduct are preferred, when the parties themselves have come to an agreement touching such fees, and it *Page 205 
appears that the agreement was arrived at after complete disclosure and full consideration, and that there was no fraudulent or unfair conduct on the part of the attorney, and that, as to the client, the agreement is fair, that agreement ought not to be disturbed by the court, but the parties should be left where they have placed themselves.
That the compensation contract here involved was fairly obtained is conceded in complainants' brief, but it is claimed that it is unfair "in its operation." Nor is it contended that the defendant was a guarantor of the enforceability of the contract between the jitney men and their corporation. In fact, it is conceded that he was not. In determining the reasonableness of the compensation provided for by the contract between the defendant and his clients, it is proper to consider the results of defendant's services. The restoration of the morale of the jitney men and the boosting of the sales prices of the individual buses and franchises were prime objects of the agreement between the jitney men and their corporation. In drafting this contract it seems to have been assumed that one of these factors, namely, the restoration of the morale of the jitney men, would have been accomplished by April 25th, 1925, as indeed it was, as that contract expired by its own limitation on that date. It cannot be denied, therefore, that the contract prevented individual sales to the Public Service Corporation, except as to the three jitney men who sold in September, 1924, for the full term contemplated by the contract itself, and, as a matter of fact, for two months longer than the contemplated term, as the injunction bills were not dismissed until the latter part of June, 1925; nor can it be denied that defendant's services resulted in the complainants' obtaining a substantially higher price for their buses and franchises than they could have obtained at the time of the defendant's employment, as is indicated by the fact that they sold their buses and franchises for $30,000 each. Of course, the complainants claim that this increased price was due not at all to anything the defendant did, but I am unable to agree with this contention. No other reason for this remarkable price advance has been suggested, and I am unable to discover any at all in the evidence. The *Page 206 
complainants are not reluctant to accept the benefits of the defendant's labors, but they object to the comparatively small benefit which the defendant claims.
"There is no yardstick by which the value of an attorney's services can be measured," and the fact that defendant's compensation was contingent upon results obtained — that if unsuccessful he would receive no compensation at all — has some weight in determining the measure of compensation to which the defendant is entitled. Soper v. Bilder, 87 N.J. Eq. 564.
While, as a general proposition, agreements between attorney and client for contingent fees are not looked upon with favor by the courts, they have been upheld and enforced in this state where fair and reasonable as to the client. Soper v. Bilder, supra;Hassell v. Van Houten, 39 N.J. Eq. 105; Wilson v. Seeber,72 N.J. Eq. 523. The test is their fairness and reasonableness as applied to the client. I have found no case, nor has the diligence of counsel referred me to any, where the attorney has not been held bound to the extent that he has not been permitted to charge more for his services than he had agreed to accept.
Counsel for complainants suggest that the court ought now to fix the total amount of the reasonable compensation to which the complainant is entitled from all who signed the compensation agreement and then apportion that amount equally among them and assess one-ninteenth of such amount against each of the complainants. This suggestion, however, completely overlooks the fact that the compensation agreement is several and not joint, and that it is the individual benefit derived from the defendant's services and the individual compensation required of each of them which is to be here considered. The value of the services to each individual is none the less because all may benefit thereby. The suggestion also presupposes that the jitney men who have not sold their buses will sell sometime in the future, an event which may never occur. In this suit I am required to pass only upon the compensation to be paid the defendant by the individual complainants, and I have no difficulty in arriving at the conclusion that the amount claimed by the defendant from each, namely, $950, is fair and reasonable under all the *Page 207 
circumstances. As to the amount of the defendant's compensation from the remaining jitney men who have not sold their buses, that problem will be considered when it arises. The contract here involved is, for the purposes of this suit, to be considered as individual in its application, and its reasonableness as to each individual party thereto determined as occasion may require.
I will advise a decree in accordance with these conclusions.