**Thomas S. GRAY, Plaintiff,**

v.

**JOSEPH J. BRUNETTI CONSTRUCTION COMPANY, Inc., Defendant.**

**Civ. A. No. 659-57.**

United States District Court
D. New Jersey.
Feb. 26, 1958.

Thomas W. Clohosey, Newark, N. J., for plaintiff, by Thomas P. Ford, Jr., Newark, N. J.

Heller & Laiks, Passaic, N. J., for defendant, by Aaron Heller, Passaic, N. J.

WORTENDYKE, District Judge.

In this diversity action, plaintiff, a resident of the State of Virginia and a member of the bar of the District of Columbia, sues the defendant, a New Jersey corporation, for a contingent fee for services upon a written agreement between the parties embodied in a certain letter dated May 27, 1955, from defendant to plaintiff. A copy of this letter is

annexed to the complaint and is quoted here, as follows:

"Joseph J. Brunetti Construction Co., Inc.,
"95 Essex Street   Maywood, New Jersey.
"May 27, 1955

"Mr. Thomas Gray
"1720 'Eye' Street, N. W.
"Washington, 6, D. C.

"Dear Sir:

"This letter is written to confirm the oral understanding reached between yourself and the writer with respect to your professional services.

"You are to be retained by us to assist our counsel and ourselves in properly preparing and defending ourselves against any action of the Federal Housing Administration or its agents, or any agency of government acting in behalf of the Federal Housing Administration, in attempting to:

A.   Roll back rents and/or cause a refund of past rents to tenants.

B.   Cause a refunding of profits (FHA terminology 'windfalls').

C.   Cause loans between parent and subsidiary corporations to be repaid.

D.   Be successful in any other action, no matter what the allegation in accomplishing A., B., or C.

"It is understood that you will devote all the time required to assist both ourselves and our counsel in these matters.

"Upon the signing of this agreement, we shall pay you $3,000 as a retainer.

"For the year starting June 1, 1955, we shall pay you $750.00 per month.

"In the event that we are *successful in avoiding* litigation *or* in the event that we are *successful in litigation in preventing* the Federal Housing Administration, its agents or agencies of the government, as aforesaid, from causing any of *the aforementioned items to occur,* then we shall pay you an additional $13,-000.   Should the government be successful in the taking over of our corporations and setting up their own Board of Directors, your work shall include the assistance to us and counsel in preventing the government from accomplishing A., B., or C. during their period of direction, and also to assist us in having these corporations returned to our control in the fastest period of time.   *Should we not be successful in any one of the counts, you will not be entitled to receive the aforementioned $13,-000.*   (Emphasis supplied.)

"*It is understood that your monthly fee shall cease at the end of the year whether or not the matter has been brought to a successful conclusion.   Your services will continue, however, after the year is up, and you shall only be entitled to receive from us the $13,000 mentioned above in the event of ultimate success on our part.*   (Emphasis supplied.)

"We agree to reimburse you for out-of-pocket expenses undertaken at our request.

"Should all of the above be in accordance with our agreement, please sign this letter in the space provided below, retain the original for your files, and permit us to keep a duplicate copy.

"Very truly yours,
"Joseph J. Brunetti Construction Co., Inc.
"/s/   Joseph J. Brunetti
Joseph J. Brunetti
President
"JJB:MB:NF
"Accepted: /s/ Thomas S. Gray
"Dated:        May 31, 1955."

Defendant admits that the foregoing letter embodies the entire agreement between the parties.   Both parties concede that those services for which, according to the terms of the agreement, plaintiff was to receive from the defendant $3,000 and $750 a month for twelve months have been performed and paid for.

Plaintiff was the sole witness in his behalf and he bases his present claim for an additional $13,000 upon the contention that because defendant was successful in avoiding litigation with the Federal Housing Administration (Administration), he, the plaintiff, has become entitled to $13,000 in addition to the $12,000 which he admittedly has received. He rests this contention upon his interpretation of the language of the contract. The defendant denies that the intention of the parties was in accord with the construction of the contract which the plaintiff would apply. As the basis for defendant's contention that it was *not* ultimately successful in avoiding all of the "actions" threatened by the Administration, defendant relies upon the conceded fact that its differences with the Administration were composed by defendant's payment, with plaintiff's approval, of $90,000 on account of the mortgage indebtedness guaranteed by the Administration. This payment was accepted as a refund of windfall profits to defendant or its subsidiary resulting from a disproportion of the amount of the guaranteed loan to the actual cost of the housing project covered by the mortgage. Both parties concede that the agreement sued upon was the joint product of the dictation, suggestions and recommendations of Monroe Bober, Secretary of the defendant, and the plaintiff. This fact is disclosed by the testimony of plaintiff and that of Mr. Bober, as well as that of the stenographer-typist employed by the defendant, to whom was dictated and who typed the letter embodying the contract.

In addition to its denial of the construction of the contract placed upon it by the plaintiff, the defendant affirmatively pleads:

(1) that the plaintiff has been paid in full for his services in accordance with the agreement.

(2) that the plaintiff has failed to perform the conditions prescribed by the terms of the contract as entitling him to the contingent fee of $13,000 for recovery of which the present suit is brought;

(3) that because the contract sued upon is for a contingent fee from client to attorney, it is enforceable only to the extent of reasonable compensation to the attorney; and

(4) that so much of the agreement as provides for the contingent fee is void because the amount stated therein is excessive and unreasonable.

No evidence was adduced upon the issue of the reasonableness of so much of the contract as provided for the contingent fee, or the amount of that fee.

The evidence disclosed that the defendant was competently represented by a New Jersey attorney, but that the employment of the plaintiff was induced by the latter's former official connection in a supervisory capacity with the Federal Housing Administration, his familiarity with its attitudes, policies and practices, his acquaintance with its directory personnel, and his geographical proximity to its headquarters in the Nation's Capital. Both parties understood and intended that unless and until litigation should be commenced between the Administration and the defendant, plaintiff's interest in defendant's behalf should not be disclosed, but that his services should be made available as a source of information, advice and recommendations respecting strategy and tactics in the negotiations conducted and to be conducted by the defendant, its officers and New Jersey attorney, with the appropriate representatives of the Administration. The execution of the contract in suit took place at a time when, by reason of the Administration's insistence that the defendant complete a questionnaire inquisitive of the profits realized by the defendant or its subsidiaries, made possible by the Administration's guarantees of mortgage loans, defendant was reluctant to make the necessary disclosures by way of answers to such questionnaire, despite threats of the Administration to take over the management of defendant and its subsidiary corporations. In this connection, defendant recognized that if the Administration assumed control over the defendant and its companies, the

restoration of so-called "windfall" profits by way of payments in reduction of the principal of the mortgage indebtedness, rent refunds to tenants, or a downward revision of the rental schedules would probably be accomplished to defendant's disadvantage.

Accordingly, Bober induced the plaintiff to come to New Jersey for discussion of the situation which confronted the defendant. In attendance at this conference, besides the plaintiff and Bober, were Joseph J. Brunetti, President of the defendant, a Mr. Apfel, defendant's accountant, and Hon. Walter D. Van Riper, the defendant's counsel. The latter directed the plaintiff to arrange with Mr. Brunetti for the working out of the terms of plaintiff's retention by the defendant, but in the actual drafting of the agreement only plaintiff and Bober participated. After it had been drafted it was submitted to and approved by Brunetti. Plaintiff testified that initially Mr. Brunetti had suggested an annual retainer, payable at the rate of $1,000 per month, and the additional $13,000 as a contingent fee in the event of litigation or the threat thereof, but that he, the plaintiff, expressed his preference for a retainer down-payment of $3,000 and further monthly installments of $750.00 throughout the year commencing June 1, 1955, together with the contingency aforesaid.

At the close of all of the evidence, each party moved for the direction of a verdict. Argument upon these motions was heard by the Court in the absence of the jury. At the conclusion of the arguments, the Court determined that there was no question for the jury to resolve and, therefore, discharged the jury and reserved decision upon the cross-motions, advising counsel that these cross-motions would be treated as if each was for judgment for the moving party.

In this case there is no suggestion of mistake, mutual or unilateral, as an inducement to the entry into the agreement. Moreover, neither party sought either reformation or cancellation of the contract. The present action is one at law for breach of an express written contract couched in common English and without any technical or abstruse verbiage. The written instrument is a memorial of the oral understanding previously reached between the parties. This is obvious from the very first sentence of the instrument. The elementary principle stated in New York Sash & Door Co., Inc., v. National House & Farms Association, Inc., E. & A. 1944, 131 N.J.L. 466, 469–470, 36 A.2d 891, 893 is, therefore, recalled that:

"* * * (W)here, as here, the parties have made a memorial of their bargain, their actual intent unless expressed in some way in the writing is ineffective, except through the medium of a reformation of the writing. While the intention of the parties is sought, it can be found only in their expression in the writing. In effect, it is not the real intent but the intent expressed or apparent in the writing that controls. The obligation of a contractor depends upon his expressed rather than his actual intention. The writing is the exclusive repository of the common intention. In the absence of reformation, the parties are bound by the language employed to state the agreement."

Although plaintiff is an attorney at law, and the agreement in suit contemplated his legal representation of the defendant, the latter was represented by its own attorney in the negotiations which brought about the "oral understanding" of which the written contract is a memorial. The services to be rendered by the plaintiff under the contract were, as stated therein, to assist the defendant's counsel and the defendant in their dealings with the Administration. As already mentioned, the reduction of the oral understanding to the written memorial was effected through the collaboration of the plaintiff and defendant's Secretary, Mr. Bober. Although the latter is not a lawyer, the services

which plaintiff performed under the contract were supervised and participated in by defendant's New Jersey counsel.

The evidence does not specifically disclose the details of the services which plaintiff concededly rendered and in payment for which the $12,000 which he has received from the defendant under the contract has been applied. It was the intention of both parties that plaintiff should remain in the background during the negotiations between defendant, its counsel and the Administration. Plaintiff was to keep himself available at all times as an on-the-spot look-out and practical advisor in the interest of the defendant and the latter's New Jersey counsel. In the performance of such functions the plaintiff reported to the defendant or its counsel from time to time by telephone, letter or in person. Conferences were held by defendant's representatives with the plaintiff at Washington and in New Jersey, and when the defendant had succeeded in its negotiations with the Administration in inducing the latter to accept a payment of $90,000 on account of the mortgage indebtedness in consideration of the elimination of threats of future action against the defendant by the Administration, plaintiff expressed his approval of the suggested settlement and joined with defendant's counsel in recommending that the defendant consummate it. Thus, to some degree, plaintiff did assist the defendant and the latter's counsel in efforts to avoid the threats of the Administration to bring about a roll-back or refund of rents, a refunding of profits, repayment of loans between parent and subsidiary corporations, and the taking over by the Administration of control of the defendant and its subsidiary companies. For his services contributory to that result the plaintiff received from the defendant $12,000. In addition to this expense the defendant paid or became obligated to pay the $90,000 as consideration for the relinquishment by the Administration of threats of further pressures and proceedings. Plaintiff's services under this phase of his retainer extended, according to his testimony, to November 1956, after which no further services were required of him.

■ We now turn to the language of the contract to determine under what circumstances plaintiff would become entitled to the payment of the $13,000 contingent fee in addition to the $12,000 which he has already received. A reading of the contract hereinabove set forth with the emphasis I have supplied to the parts I regard as most appropriate in determining what the parties intended leads me to the conclusion that it must be construed in a manner entitling plaintiff to prevail. As between two possible constructions of the language of the instrument, only that should be adopted which is consistent with fairness and which will avoid an absurdity. Throughout the instrument in suit the words "success" and "successful" are repeatedly employed. What the defendant was seeking to avoid was action by the Administration in the directions particularized in subdivisions A., B., C. and D. of the second paragraph of the letter. Defendant hoped to achieve such avoidance without litigation, and to that end retained plaintiff's collaborative services. For helping the defendant in its endeavors to forestall all of such actions by the Administration, the plaintiff has been paid $12,000 in accordance with the terms of the contract. For the purpose of buying its peace and thereby avoiding litigation, defendant succeeded in negotiating a settlement with the Administration involving a payment of $90,000 in the form of a refund of "windfall" profits. The accomplishment of its compromise with the Administration has rendered successful defendant's efforts to avoid litigation, and thereby created the condition precedent to plaintiff's right to payment of the contingent fee as provided in the contract. Defendant's "ultimate success" entitling the plaintiff to receive the additional $13,000 is found in its relief from the types of previously threatened consequences of action by the Administration.

The Court finds, therefore, that defendant was "successful in avoiding litigation" with the Federal Housing Administration respecting actions taken or threatened by it as contemplated by the parties to the agreement here in suit. Efforts toward the achievement of such ultimate avoidance of litigation were among the professional obligations which plaintiff assumed under the contract. It is obvious that the parties contemplated that such efforts might have to be continued beyond the period during which the attorney would be entitled to receive the monthly payments on account of his retainer. Indeed, they did extend to November, 1956. It is not to be assumed that the parties intended that such further services, if successful, should be unrewarded. Accordingly, the Court concludes that plaintiff is entitled to recover from defendant the contingent fee of $13,000 provided for in the contract, unless such a fee or the amount thereof renders the contract pro tanto illegal or void.

Defendant relies on Hughes v. Eisner, App.Div. 1951, 14 N.J.Super. 58, 81 A.2d 394; and upon Soper v. Bilder, N.J.Ch. 1917, 87 N.J.Eq. 564, 100 A. 858, for support of its contention that the present contract is unfair and should not be enforced to the extent that it provides for the contingent fee here sought to be recovered. It should be remembered, at the outset, that the case is barren of any evidence, by way of facts or opinion upon which this Court could determine of what plaintiff's services to defendant consisted or what compensation would be fair under all of the circumstances affecting the parties. What specifically did plaintiff accomplish for defendant? To what extent did his services contribute to the result achieved? What was the probable amount of defendant's ultimate loss exposure in the event of the Administration's complete accomplishment of the actions which it threatened and its success in any litigation which might have arisen between it and the defendant? Answers to all of these and other questions, though essential, were not forthcoming. As was stated in Soper v. Bilder, supra, and quoted in Hughes v. Eisner, supra, 14 N.J.Super. at page 64, 81 A.2d at page 397:

" 'In computing what is reasonable compensation (for an attorney) many elements must be taken into account. There is no yardstick by which the value of legal services can be measured; no rate per diem or percentages can be employed with justice to both parties. The legal ability of the attorney, the amount of work which he does, the skill with which he does it, and, of much importance, the amount involved, and the success of his efforts. There may also be considered the contingency that in case he is unsuccessful he will receive nothing * * *'."

More recently, however, Chief Justice Weintraub reminds us (In re Quinn, 1957, 25 N.J. 284, 135 A.2d 869, at page 872):

"The intangibles which bear upon the fairness of a fee, Canon 12; State [by Parsons] v. United States Steel Corp., supra (22 N.J. [341] at pages 360–361, 126 A.2d [168] at page 179), defy translation into simple mathematics. At times lawyers differ widely in their appraisals of the value of services, and it is not uncommon for a court to slash requests for allowances. It would be unthinkable to condemn a demand or charge as unethical merely because it exceeds another's judgment of what is fair. *The touchstone is moral turpitude.* Cf. In re Frankel, 20 N.J. 588, 596, 120 A.2d 603 (1956). It therefore is not enough that a charge is excessive or unreasonable; rather *it must be such to a degree which compels a finding that the attorney intended to overreach.* Cf. In re Hahn, 84 N.J.Eq. 523, 94 A. 953 (Ch. 1915)." (Emphasis supplied.)

In the case at bar, although plaintiff is a lawyer and the contract sued upon contemplated legal services, defendant's *counsel* was an eminent and competent

counselor at law of New Jersey, whose advice was available to defendant when the contract was entered into, and to whom plaintiff's services under the contract were directly and immediately rendered. No fraud inducing the making of the contract is charged. No testimony respecting the propriety of the terms of the contract was offered by counsel for defendant under whose directions plaintiff's services were rendered. Defendant seeks no return of any money paid to plaintiff under the contract, and defendant's plea of invalidity of the contract goes only to the construction of it contended for by the plaintiff.

Assuming there had been evidence in this case by which the contract between the parties could have been appraised for fairness, neither the Hughes nor the Soper case supports defendant's contention that the contract is invalid. Both Hughes and Soper were equity cases. In Soper the bill was to set aside a deed to the defendant attorney conveying an interest in grantor's lands by way of compensation to the attorney for services rendered to the grantor if they should prove successful in the litigation which he was requested to undertake. The Court refused to set aside the deed holding that the value of the interest conveyed was fair in the light of the services rendered by the attorney to the grantor, at the suit of the complainant, grantor's donee of a part interest in the real estate. The Court found that the client fully understood the effect of what she was doing. She subsequently ratified the fee contract by executing the deed, and there was no evidence of concealment or overreaching on the part of the attorney. In Hughes the Chancery action was to annul an agreement for attorney's fees and to recapture part of the fees already paid. A judgment was entered, 8 N.J. Super. 351, 72 A.2d 901, that the attorney forego any additional charge against the client over and above the amount already received by the attorney. On appeal the judgment was reversed. The Appellate Division, while recognizing that a court of equity may inquire into the fairness

and reasonableness of a fee contract between an attorney and a client, and that in case of part payment the court may find that the attorney has been adequately compensated, adds, 14 N.J.Super. at page 65, 81 A.2d at page 397:

"Yet a contract of this nature, fair and reasonable in its terms, and fairly agreed to by the client after mature deliberation, with full knowledge of the situation, should not be carved away by the court except in an entirely clear case."

■■■ This Court recognizes that equitable defenses may be presented in an action at law such as the case at bar. The defendant has not interposed a counterclaim to annul, modify, cancel or reform the contract in suit. Defendant cannot be heard to ratify the contract if it be construed as the defendant would have it, and assert its invalidity if construed in accordance with the plaintiff's contention. Assuming that there had been such a confidential relationship between the plaintiff and the defendant in this case that the burden of proving fairness of the fee contract rested upon the plaintiff, defendant cannot charge failure to discharge such a burden if proffered testimony in support of the fairness of the terms of the contract was excluded upon defendant's objection and no testimony was offered by the defendant from which an inference could be drawn that the contract was vulnerable to attack for fraud, concealment or overreaching.

■■■ Assuming that defendant effectively raised the issue of fairness of the contract by its affirmative defenses, that issue was for the Court, not for the jury, to resolve. The completeness of the disclosure of the circumstances surrounding the making of the contract and the absence of any evidence tending to support the defendant's contention that the contract was unfair compels the conclusion that the agreement of the parties, insofar as it provided for a contingent fee to be paid to the plaintiff, was entirely valid and enforceable. If, however, the defendant is prepared to pro-

duce evidence that the amount of the contingent fee provided in the contract is so excessive or unreasonable as to compel a finding that the plaintiff intended to over-reach the defendant in insisting upon the inclusion of such a provision in the contract, this Court, sitting in equity, without a jury, will afford an opportunity for the presentation of such evidence, provided notice of intention to present such evidence, containing a summary thereof, is served upon the plaintiff and filed in this cause within ten days next succeeding the filing of this opinion. Should the defendant fail to avail itself of this leave in the manner herein directed, plaintiff's motion for judgment against the defendant for $13,000 and interest thereon from February 21, 1957, must prevail. In such event, defendant's motion will be denied. An order may be presented in conformity with the views herein expressed.