Thomas D. GRAY, Plaintiff,

v.

JOSEPH J. BRUNETTI CONSTRUC-TION CORP., Inc., Defendant.

Civ. A. 659–57.

United States District Court
D. New Jersey.

April 21, 1958.

**152**

Thomas W. Clohosey, Newark, N. J., for plaintiff, by Thomas P. Ford, Jr., Newark, N. J.

Heller & Laiks, Passaic, N. J., for defendant, by Aaron Heller, Passaic, N. J.

WORTENDYKE, District Judge.

By its opinion filed in this case on February 26, 1958, this Court construed the written contract between the parties, dated May 27, 1955, as entitling the plaintiff, an attorney at law of the District of Columbia, to additional compensation for professional services to the defendant. Because, however, of the relationship of attorney and client between the parties and defendant's plea that the contingent provisions of the contract were unreasonable and enforceable only to the extent of securing to the plaintiff reasonable compensation, this Court accorded to the defendant leave to present evidence which might tend to show "that the amount of the contingent fee provided in the contract is so excessive or unreasonable as to compel a finding that the plaintiff intended to over-reach the defendant in insisting upon the inclusion of such a provision in the contract * * *." [159 F.Supp. 417, 425.]

Reference to the Court's previous opinion in this case will indicate that the evidence disclosed that the terms of the agreement between the parties were arrived at and settled orally by and between the plaintiff and Joseph J. Brunetti, the president and sole stockholder of the defendant corporation. It seems obvious, therefore, that the most reliable sources of evidence tending to indicate the true intent and purpose of the parties in entering into the contract, and bearing upon the issue of whether any fraud or over-reaching on the part of the plaintiff played a part in the formation of the contract, would be found, if anywhere, in testimony of the plaintiff and of Mr. Brunetti respectively. The plaintiff testified respecting the circumstances surrounding the making of the contract, but the Court was deprived of the benefit of any testimony by Mr. Brunetti respecting the same, since the latter neither appeared nor took the stand upon the main trial or upon the supplemental hearing. There was testimony upon the latter hearing given by defendant's vice-president, Mr. Bober, that he was present with Mr. Brunetti and with defendant's New Jersey attorney, Mr. Van Riper, in Mr. Van Riper's office, at a discussion with the plaintiff, in the course of which the employment or retention of the plaintiff by the defendant was discussed and the anticipated nature and extent of plaintiff's services were outlined. Following this phase of the conversation, all but the plaintiff and Mr. Brunetti left the room, and the plaintiff and Mr. Brunetti reached an understanding between themselves. Mr. Brunetti then recalled Mr. Bober and instructed him respecting the terms of the agreement between the parties, and directed him to embody them in writing.

The following day Mr. Bober and the plaintiff collaborated in the reduction to writing of the terms of the understanding previously reached by the plaintiff and Mr. Brunetti, quoted at length in my previous opinion. With respect to whether he considered $25,000 fair as a maximum fee for the plaintiff under the contract, Mr. Bober testified that the amount of the fee was negotiated personally between the plaintiff and Mr. Brunetti and that he, Mr. Bober, had:

"* * * no say whatsoever with respect to the amount of money that Mr. Brunetti, who was the only stockholder of all these companies, would make with anybody, because I (Bober) am merely his employee and carry out his wishes. If he were to tell Mr. Gray a hundred thousand dollars, I would still have made no comment. * * * I merely had something to do with the writing of the instrument, which was to put down what had been previously negotiated and agreed upon. I didn't negotiate the contract. * * We agreed to pay Mr. Gray for his special talents, influence, and abilities with respect to his knowledge of the F. H. A. * * *."

The written contract was dated May 27, 1955. During the summer or early fall of the same year Mr. Bober, at Mr. Brunetti's request, sought to persuade Mr. Gray to cancel or terminate the contract, but Mr. Gray was unwilling to consent. Thereafter Mr. Gray continued to perform such services as he did perform for the defendant, and the defendant continued to use such services until December of 1956. No action for reformation or rescision of the contract was ever instituted by the defendant.

There was no testimony that the plaintiff committed or was chargeable with any fraud or over-reaching in the negotiations which resulted in the making of the contract in suit nor in the process of reducing the terms of the agreement to writing.

Mr. Van Riper, defendant's New Jersey attorney, had no knowledge of the terms of the contract in suit until after the filing of this Court's opinion construing those terms. Mr. Van Riper was, however, familiar with at least some of the services rendered by the plaintiff pursuant to the contract. Mr. Van Riper testified that in his opinion $25,000 as compensation to the plaintiff for his services under the contract as construed by this Court was excessive, adding that he (Van Riper) charged $25,000 for his own services and believed that thirty-five to forty percent of that amount would be adequate compensation for the services rendered by Mr. Gray. Mr. Van Riper expressed the further opinion that he would be the last one to say that Mr. Gray would do anything that was fraudulent. However, Mr. Van Riper was of the opinion, under all the circumstances, "that the phase of the contract which has to do with the payment of $13,000 * * * in case litigation was avoided, which could always, at any time, have been avoided, (was) * * over-reaching."

On the other hand, there was evidence from which it is reasonably inferable that upon the basis of answers to questionnaires delivered to the F. H. A. in behalf of the defendant and its affiliated companies (all owned by Mr. Brunetti), eighteen of these corporations had received "windfalls" aggregating $236,-135.55, and another of the corporations an additional sum of $10,215.83. It is conceded that Mr. Brunetti's companies were successful in effecting a compromise of their aggregate liability to the F.H.A. for the sum of $90,000.

It will be borne in mind, as disclosed in my previous opinion, that plaintiff received from defendant on account of the services called for by the contract in suit, the sum of $12,000. In issue upon the supplemental hearing was the additional sum of $13,000 contingently payable to the plaintiff by the terms of the contract as construed by the Court.

Upon the question of the reasonableness of this additional amount in the light of the nature and extent of the plaintiff's services to the defendant, there was placed in evidence plaintiff's particularization of his services in the form of his answer to one of the interrogatories propounded to him by the defendant. From these particulars it appears, according to plaintiff's contention, that he conferred with representatives of the defendant in New York or in New Jersey, subsequent to the date of the contract in suit, on two occasions, and in Washington, D. C. on three "and probably more" occasions. Plaintiff also mentioned numerous long distance telephone conversations between himself and defendant's representatives. The same particulars also included plaintiff's assertion that at the time he was employed by the defendant, there existed a possibility that the F. H. A. might seek to compel defendant and its affiliated corporations to restore to the controller mortgagor corporations in excess of $1,000,000 in construction profits and mortgage premiums and approximately $1,100,000 in borrowings by the defendant and affiliated corporations from their operating cash surpluses. Plaintiff's further statement in this connection mentioned the additional possibility that F. H. A. would attempt to compel a reduction of rents in properties owned or controlled by defendant and

its affiliated corporations, to the extent of $194,000 per annum.

The evidence further disclosed that from the date of the contract through December 13, 1956, when the $90,000 settlement was finally agreed upon, plaintiff wrote nineteen letters to defendant or its New Jersey attorney, Mr. Van Riper. Mr. Van Riper wrote one letter, and the defendant a second letter to the plaintiff during the same period. The substance of each of these nineteen letters was disclosed in the evidence and was only of uncertain assistance to the defendant.

The plaintiff described at some length, albeit in general terms, the nature and extent of his services to the defendant. They consisted principally of ascertaining the policies and attitudes of F. H. A. in other cases and toward that of the defendant, and reporting this information to defendant's representatives. Plaintiff also testified that because of his contractual relationship with the defendant he kept abreast of the current rulings and decisions of the Administration in cases in which it was concerned. Plaintiff conceded that his representation of the defendant was not disclosed to the Administration and that the direct dealings between the defendant and the Administration were conducted by Mr. Van Riper. Plaintiff repeatedly and emphatically denied that he was hired by the defendant for any influence which he might be able to exert over or with the F. H. A. or its representatives. He contended that, on the contrary, he was hired for "talent, background and years of experience."

Plaintiff called as an expert another Washington attorney who testified that in his opinion the services which the plaintiff testified that he rendered to the defendant were reasonably worth between $25,000 and $30,000. However, upon the hypothesis that the matters in difference between the defendant and the F. H. A. could have been settled before the plaintiff was retained for approximately $100,000 and that they were ultimately settled for $90,000, this witness conceded that $25,000 would not be a proper fee for Mr. Gray in addition to the fee in a like amount which defendant's other attorney, Mr. Van Riper had charged and received.

■ I adhere to my previous ruling that an agreement for a contingent fee will not be condemned and struck down in absence of evidence that it is excessive or unreasonable to such a degree that it compels a finding that the attorney intended to over-reach. Such is not here the case, but the fact that the contingent fee arrangement is not condemned *per se* does not divest this Court of jurisdiction to inquire into its reasonableness. It has long been and still is the law of New Jersey that when a fee agreement between attorney and client is called in question by the client, a Court in the exercise of its equitable discretion will sustain the agreement "only to the extent of securing to the attorney reasonable compensation under all the circumstances of the case * * *." Soper v. Bilder, Ch. 1917, 87 N.J.Eq. 564, 569, 100 A. 858, 860; Hughes v. Eisner, App.Div.1951, 14 N.J.Super. 58, 81 A.2d 394, appeal dismissed, 1951, 8 N.J. 228, 84 A.2d 626. The opinion in the Soper case describes the criteria for the determination of the reasonableness of an agreement for compensation between attorney and client. These criteria were quoted in my previous opinion. On the other hand, where, as in the present case, the parties themselves have come to an agreement touching the attorney's fees and the agreement was arrived at after apparent complete disclosure and full consideration and there was no fraudulent or unfair conduct on the part of the attorney, and, as to the client, the agreement is fair, such an agreement should not be disturbed by the Court, but the parties should be left where they have placed themselves. Grimm v. Franklin, Ch.1928, 102 N.J.Eq. 198, 140 A. 236, affirmed per curiam E. & A.1929, 110 N.J.Eq. 573, 146 A. 914.

■ As previously herein stated, the agreement in suit was made in behalf of the defendant by Mr. Brunetti, its president and the owner of all of its stock.

He has offered no testimony respecting the circumstances surrounding the manifested mutual assent of the parties leading to the achievement of the agreement, the correctness of the written embodiment of the agreement which he personally signed in his official capacity, or the fairness or reasonableness of the amounts required to be paid in accordance with the terms thereof. As sole stockholder of the defendant, it would be against Mr. Brunetti's financial interest to be compelled to pay the plaintiff the contingent fee provided by the terms of the contract in suit. Mr. Brunetti, therefore, had every reason and motive to present any evidence he might have to refute the claims of the plaintiff. This he failed to do despite his conceded availability as a witness. It is hornbook-law that where a party fails to testify or produce evidence within his control, which it would be to his interest to produce, a court, sitting as the trier of the facts, may infer from such failure that such testimony or evidence if given or produced would have been unfavorable to the party in whose behalf it was offered. Kuhn v. United States, D.C.N.J.1958, 157 F.Supp. 331; Michaels v. Brookchester, Inc., 26 N.J. 379, 140 A.2d 199; Interchemical Corp. v. Uncas Printing & Finishing Co., App.Div.1956, 39 N.J.Super. 318, 120 A.2d 880.

However, the nature and extent of plaintiff's services to the defendant have been disclosed in the proofs and the Court has had the benefit of expert testimony respecting the issue of reasonableness of the contingent fee. In view of the uncontradicted evidence that the plaintiff has only received $12,000 on account of the services which he rendered, an additional fee of $7,500 appears to afford, in the Court's opinion, generous compensation to the plaintiff for the services which the Court finds that he rendered to the defendant under the contract in suit.

The foregoing supplemental opinion shall be deemed to constitute this Court's findings of fact and conclusions of law upon the issues reserved in its prior opinion. Plaintiff is entitled to judgment against the defendant in the sum of $7,500 together with interest thereon from February 21, 1957, and costs. An order may be presented in accordance with the views herein expressed.