Jador Service Co., a corporation of the State of New Jersey, complainant-respondent,

*v.*

Eleanor S. Werbel and Sidney K. Werbel, defendants-appellants.

[Submitted February term, 1947. Decided May 15th, 1947.]

Mr. *Ernest P. Biro,* for the complainant-respondent.

Mr. *Samuel H. Nelson* and Mr. *Sidney K. Werbel,* for the defendants-appellants.

The opinion of the court was delivered by

CASE, CHIEF-JUSTICE.

This is an appeal from an order, entered on the advice of Vice-Chancellor Bigelow, refusing to strike the complainant's bill for specific performance of an option in a lease to renew. On July 9th, 1945, the complainant as tenant and the defendants as landlords entered into a lease covering real estate to be used and occupied as a gasoline and oil service station, automotive repair shop and allied uses "for the term of twelve months from August 1st, 1945, to September 30th, 1946," with an option to the tenant as follows:

"The Tenant reserves the right, privilege, and option to renew the within lease for a term of four years commencing August 1, 1946, and terminating September 30, 1950, at a monthly rental of One Hundred Fifty ($150.00) dollars per month so long as gasoline rationing continues. Upon the termination of the Government program of gas rationing the minimum monthly rental shall be increased to One Hundred Seventy Five ($175.00) Dollars per month until September 20, 1950. In the event the Tenant desires to exercise this option to renew the within lease upon the terms contained herein, then and in that event the Tenant shall give to the Landlord Ninety (90) days written notice by Registered Mail of the Tenants intention so to do. Otherwise the within lease shall terminate September 30, 1946."

There were other provisions in like language giving options for two additional periods of renewal. On April 12th, 1946, the tenant sent by registered mail a letter, received by the landlords the next day, giving notice of the exercise by the tenant of its option, together with a certified check in the amount of $500 which was the deposit required of the tenant in the event that it should exercise the option. On May 2d the landlords returned the check with the statement that the same was not "acceptable." On August 1st, 1946, the landlords instituted a dispossess action in the District Court returnable August 22d, 1946. Before the return day the tenant filed this bill setting up the lease and the provisions thereof, complainant's compliance with the terms of the option, alleging that complainant had entered into a contract with the Standard Oil Company of New Jersey and had spent large sums of money in and about the improvement of the premises, and that the defendants, landlords, had threatened to harass

complainant with other suits of like nature if the pending suit in the District Court should fail, and praying that the defendants "may be decreed to specifically perform the said agreement of lease," and they be enjoined from proceeding with the dispossess suit and from instituting other suits during the pendency of the Chancery proceeding. Appended was the usual formal prayer for "such further or other relief in the premises as equity and good conscience may dictate." Defendants moved to dismiss the bill for lack of equity and because complainant had a complete remedy at law. Thereupon followed the order above mentioned, and this appeal.

The obvious confusion between the actual ending of the first lease year on August 1st, 1946, and the naming of September 30th, 1946, as the expiration of the one-year period had no practical effect upon the option to renew for the reason that the notice was given more than 90 days before August 1st, 1946, and was for an extension which, according to the allegations of the bill, was to begin on that day. There was no occasion, on the present issue, for reformation or correction of mistake; the bill was not framed for such relief and such relief was not asked. The best that can be said of it for the landlords is that they gave alternative dates of which the tenant selected one.

The parties could have contracted for a newly executed instrument, but they did not. In so far as their purpose is reflected by the lease agreement and other proofs submitted on the application for temporary restraint nothing was within their thought as needed to make the extension effective other than a compliance by the tenant with the requirements that it give the advance notice and make a deposit by way of security in the amount of $500. Nowhere was there a suggestion that a further instrument was necessary or anticipated or that the landlords' consent or affirmance was to be had. The letter which gave notice of continuance and carried the deposit asked nothing further than that the landlords "be kind enough to acknowledge receipt of the enclosure so that I may have my records complete." The bill of complaint does not ask that the defendants be directed to prepare or to execute a new instrument or an *addendum* to the existing instrument.

If the named steps were taken, the lease—so the implication is—would endure; if not, the lease would "terminate September 30th, 1946." The option to "renew" could accurately have been termed an option for an extension. *Orr* v. *Doubleday, Page & Co., 223 N. Y. 334; 119 N. E. Rep. 552.* "It has long been settled that where a demise in writing extends over a fixed period, with a provision for its continuance over another fixed period, at a rental fixed, the right of the tenant continues after the determination of the first period, if he elects, and such election will be indicated by his continuing in possession and paying the rent. Such additional term is not a new demise, but a continuation of the old one." *Balura* v. *McBride, 75 N. J. Law 480; Johnson* v. *Bates, 128 N. J. Eq. 183. Cf. House* v. *Burr, 24 Barb. 525; Andrews* v. *Marshall Creamery Co. (Iowa), 60 L. R. A. 399; Ranlett* v. *Cook, 44 N. H. 512; 84 Am. Dec. 92; McClelland* v. *Rush (Penn.), 24 Atl. Rep. 354; Willoughby* v. *Atkinson Furnishing Co. (Me.), 44 Atl. Rep. 612.* The editorial writer in *L. R. A. 1916E p. 1238,* summarizes the trend of the decisions as follows:

"The modern courts generally do not regard a new lease as necessary where the lessee has an option of extension, and most of them hold also that a new lease is not necessary where there is a privilege of renewal. That is to say, the technical meaning of the word 'renewal' is usually not regarded as controlling; the general intention of the parties is to be followed with a liberal rather than a technical construction of the privilege or option. It is the general rule that no new lease is necessary upon exercising an option for extension."

Clearly, it was the intention of the parties that no new or other lease agreement should be entered into; and none was necessary. The option on the part of the tenant to renew by giving notice, making a deposit and paying the increased rent was, under the facts of the case, self-executing. If the lease provision was as pleaded and the complainant did, as it says, the acts there required, all that it had to do further was to remain in possession and fulfill its duty as a tenant. It had, on its own pleading, a good defense at law.

The alleged threats of the defendants to harrass complainant even if the law action went against them were idle mur-

murings until the first suit had been adjudicated and complainant's claim to continued possession under the lease had been vindicated. "A bill of peace, enjoining a litigation at law, is allowable only when the complainant has already satisfactorily established his right at law, or where he claims a general and exclusive right, and the persons who controvert it are so numerous that the endeavor to establish the right by actions at law would lead to vexatious and oppressive litigation, and renders an issue under the direction of the court indispensable to embrace all the parties concerned, and to avoid multiplicity of suits." *Lehigh Valley Railroad Co.* v. *McFarlan, 31 N. J. Eq. 730, 754.*

Chancery, in proper instances, has inherent jurisdiction to relieve against forfeiture. *Sparks* v. *Lorentowicz, 106 N. J. Eq. 178.* There must, however, be an invasion of equitable rights, *McGann* v. *LaBrecque Co., 91 N. J. Eq. 307.* An allegation of "forfeiture" does not create one. *Galka* v. *Tide Water Associated Oil Co., 133 N. J. Eq. 137.* This is not a case of forfeiture. There was no breach by the complainant of a duty under its contract, such as the payment of rent, by reason of which the defendants claimed the forfeiture of an estate. "A forfeiture is in the nature of a penalty for the doing or the failure to do a particular thing, *e. g.,* using leased premises for a purpose prohibited by the lease, failing to pay rent, and the like. To incur a forfeiture is to fail to keep an obligation." *Rankin* v. *Homestead Golf and Country Club, Inc., 135 N. J. Eq. 160, 165.* The tenant was under no obligation to exercise its option and failure to do so subjected it to no punishment. The failure to exercise an option for a renewal of a lease is not a true forfeiture and, notwithstanding the Chancery decision in *Milonas* v. *Harmony Country Club, 108 N. J. Eq. 485,* we reserve the question of whether it would constitute a ground for equity intervention. But if, for the purposes of the argument, we assume that a failure to comply with the terms of the lease with respect to the extension would constitute a forfeiture, against which equity would for good reason grant protection, where was the forfeiture? Where was the omission or default upon which a forfeiture might be claimed and against which relief might

be given? None is alleged and none is apparent. Nothing appears that cannot be defended against at law. *Warne* v. *Wagenor, 15 Atl. Rep. 310* (not officially reported).

We find that no equitable right is involved.

The ground upon which the Vice-Chancellor seems chiefly to have relied in sustaining the bill may best be given in his own words. Stating that he is not informed as to what the defense in the District Court would be, he says: "I am reluctant to force complainant to walk into an ambush in the District Court. An eviction proceeding before a justice of the peace or a District Court is more in the nature of an administrative proceeding than a judicial process. The distinctive feature of a judicial action, the conclusive character of the judgment, is lacking. The justice or the District Court, after a most summary inquiry, may award possession to the landlord and then the landlord's right to possession is determined in the tenant's action for damages. The action for damages would not be an adequate remedy for the destruction of the complainant's business if complainant should be wrongfully removed from the demised premises."

We have found that no equitable right is involved. That being so, Chancery had no jurisdiction to enjoin summary proceedings by the landlords to dispossess the tenant. The criticism that the District Court action is not a judicial proceeding is unsound. When the legislature in 1847 enacted the statute providing for summary proceedings by a landlord to obtain possession of his property, its object was to settle speedily the right to the immediate possession by a judicial proceeding and thereby avoid actual physical conflict; the occurrence of which had made necessary the statutes relating to forcible entry and detainer. But the legislature recognized that the landlord might be in the wrong and, therefore, took away from the judgment of dispossession all semblance of a determination of the ultimate right as distinguished from the immediate by enacting that the landlord should remain liable in an action of trespass (as he had been under the English law for centuries) for any unlawful proceedings under the act. An alleged inadequacy of that procedure, unless there be an encroachment upon equitable rights, is not

a ground for Chancery intervention. Inadequate damage and irreparable injury are not synonymous. *McGann* v. *La-Brecque·Co., supra.* The District Court is a court of general jurisdiction, although the amount of its jurisdiction is limited, *Luller* v. *Neubauer, 100 N. J. Law 17;* affirmed, *101 N. J. Law 222,* and has jurisdiction even to pass on questions of title to land within the limits set by the statute, *Eisler* v. *Halperin, 89 N. J. Law 278.* The District Court has undoubted jurisdiction in proceedings between landlords and tenants. *R. S. 2:8–40.* If the tenant desired more formal proceedings than was to be had in the District Court, it could, under *R. S. 2:58–27,* have applied to a Justice of the Supreme Court for an order transferring the cause to the Essex County Circuit Court.

The order under review will be reversed, and the record remanded to the Court of Chancery to the end that a decree be entered striking out the bill of complaint.

*For affirmance*—BODINE, WACHENFELD, EASTWOOD, DILL, McLEAN, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, PARKER, DONGES, HEHER, COLIE, WELLS, RAFFERTY, FREUND, McGEEHAN, JJ. 9.