VICTORIA MICHAELS AND FRANK MICHAELS, PLAIN-
TIFFS-APPELLANTS, v. BROOKCHESTER, INC., A NEW
JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Argued February 4, 1958—Decided March 31, 1958.

Mr. *Sidney Slauson* argued the cause for plaintiffs-appellants (*Mr. Henry J. Bendheim,* on the brief).

Mr. *William R. Morrison* argued the cause for defendant-respondent (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

The opinion of the court was delivered by
WEINTRAUB, C. J.   Defendant owns a garden apartment containing about 1,750 dwelling units.   It leased an apart-

ment to plaintiffs, Mr. and Mrs. Michaels. Among the fixtures therein were steel kitchen cabinets. Plaintiffs asserted that defendant's maintenance men, notified that the upper hinge of a cabinet door was loose, promised to repair it but did not. The hinge gave way and the door struck Mrs. Michaels. She and her husband prevailed upon a jury verdict.

The case was tried upon the theory that the lease obligated defendant to repair. Concluding that the agreement was ambiguous, the trial court left its meaning to the jury. The Appellate Division believed the lease to be clear and devoid of the asserted obligation upon the landlord, and hence reversed. We granted plaintiffs' petition for certification, 25 *N. J.* 329 (1957).

## I.

■ Historically a lease was viewed as a sale of an interest in land. The concept of *caveat emptor,* applicable to such sales, seemed logically pertinent to leases of land. There was neither an implied covenant of fitness for the intended use nor responsibility in the landlord to maintain the leased premises. *Bauer v. 141–149 Cedar Lane Holding Co.,* 24 *N. J.* 139, 145 (1957) ; *Bolitho v. Mintz,* 106 *N. J. L.* 449 (*E. & A.* 1930). This principle, suitable for the agrarian setting in which it was conceived, lagged behind changes in dwelling habits and economic realities. 1 *America Law of Property* (1952), § 3.78, *p.* 347. Exceptions to the broad immunity inevitably developed.

■ Thus, for example, it is now settled that the landlord owes a duty of reasonable care with respect to the portions of a building which are not demised and remain in the landlord's control. *Dubonowski v. Howard Savings Institution,* 124 *N. J. L.* 368 (*E. & A.* 1940) ; *Perry v. Levy,* 87 *N. J. L.* 670 (*E. & A.* 1915).

Another exception is predicated upon a landlord's covenant to repair, and this is the one upon which the present case turned. Some jurisdictions deny recovery for consequential

damages for a breach of an obligation to repair, seeing no basis for an action in tort and confining recovery in contract to the cost of repairs. Others, however, hold the landlord liable to the tenant and to all persons on the demised premises with the tenant's consent, on the ground that a covenant to repair, when made by a landlord, gives rise to a duty to exercise due care and hence responsibility for a negligent failure to perform. This view, initially a minority one, was adopted in the *Restatement of Torts* (1934), § 357, and has attracted so much support that it is said the states are now about equally divided on the proposition, *annotation,* 163 *A. L. R.* 300 (1946), although other authorities still describe it as a minority doctrine. *Prosser, Torts* (*2d ed.* 1955), § 80, *p.* 474; 1 *American Law of Property* (1952), § 3.79, *p.* 352.

■ Thus far it is debatable whether our cases square with either view. The landlord's liability for failure to perform a covenant to repair is agreed to be grounded in tort, *i. e.,* negligence, *Granato v. Howard Savings Institution,* 120 *N. J. L.* 94 (*Sup. Ct.* 1938), but controversy persists with respect to whether any one other than the tenant may sue. The Court of Errors and Appeals divided equally on that issue in *Colligan v. 680 Newark Ave. Realty Corp.,* 131 *N. J. L.* 520 (*E. & A.* 1944). It should be noted that the line of cleavage in *Colligan* is not the one which divides the other jurisdictions. They differ as to whether the liability is contractual or tortious, and from their respective conclusions on that question, move to different results. Those which adhere to the contract approach deny liability for negligent injury whether the plaintiff be the tenant or another, whereas those who find a tortious duty do not confine liability for consequential damages to the parties to the lease. See *A. L. R., annotation, supra* (163 *A. L. R.,* at 313). Thus the suggested demarcation separating the tenant from others on the premises with his consent is peculiarly our own.

This court heretofore adverted to the problem presented in *Colligan* but left it unresolved since the issue was not

imperatively presented. *Daniels v. Brunton,* 7 *N. J.* 102 (1951); *White v. Ellison Realty Corp.,* 5 *N. J.* 228 (1950). Inasmuch as plaintiffs here are the tenants, we do not have that issue before us, but at least a portion of the philosophy debated in *Colligan* does enter into the present case and hence calls for consideration of its validity.

The jurisdictions which deny recovery insist upon an element of reserved control in the landlord as a basis for liability in tort and find that a covenant to repair does not supply that element. *Cullings v. Goetz,* 256 *N. Y.* 287, 176 *N. E.* 397 (*Ct. App.* 1931); *De Clara v. Barber Steamship Lines, Inc.,* 309 *N. Y.* 620, 132 *N. E. 2d* 871 (*Ct. App.* 1956); 1 *Tiffany, Real Property* (1939), § 106, *p.* 161; 4 *Shearman and Redfield, Negligence* (1941), § 786, *p.* 1805; *Comment,* 48 *Mich. L. Rev.* 689 (1950). It is the control feature which figured largely in the opinions of the judges in *Colligan.* Their divergent views were revealed in their treatment of *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.* 1940), wherein an employee of a tenant recovered for personal injuries caused by the fall of a radiator located within the demised premises. The judges in *Colligan* who would confine liability to the tenant alone construed *Monohan* to turn upon the fact that the radiator was part of the central heating plant and thus to represent merely an extended application of the principle of retained control, rather than to rest upon a duty arising out of a covenant to repair. The other judges, however, deemed *Monohan* to mean simply that the landlord's covenant to repair itself gave rise to a tort duty.

In the present case, much argument was pressed with respect to whether the covenants of the lease gave defendant reserved control over the kitchen cabinet. The cabinet, unlike the radiator in *Monohan,* cannot be identified with a central system, and hence there is posed the question whether the concept of reserved control is an essential factor where there is a covenant to repair. We think it is not.

The element of control is useful to identify what is leased and what remains in the possession of the landlord, in order to ascertain whether, wholly apart from a contractual assump-

tion, an obligation existed in the landlord with respect to the site of the injurious event. *Taylor v. New Jersey Highway Authority*, 22 *N. J.* 454, 461 (1956). But if by "control" one means the right or power to admit or exclude from the demised premises, obviously that right resides in the tenant and is not reserved to the landlord by virtue of a covenant to repair. To find such control in a landlord with respect to premises in fact leased and in the tenant's exclusive possession, is to indulge in fiction. Fictions have traditionally served the common law's drive to achieve justice. But a direct statement of the desirable result without figmental veneer would do as well, and indeed be more serviceable, for fictions tend to intrude into situations for which they were not invented. Here the question is simply one of policy, whether such liability in a landlord for breach of a covenant to repair, would advance justice. Men may readily differ in their answer, but nothing is gained by searching for and pretending to find a power of control in the landlord when obviously it does not exist. Whatever service a fictional extension may still render in fixing responsibility where the parties have not contracted for it, it has no sensible role in deciding whether liability in tort should exist by reason of a landlord's agreement to repair.

We are satisfied that a landlord's covenant to repair gives rise to a duty in tort with liability to the tenant for damages consequential to a negligent failure to perform, and that such liability is not dependent upon nor limited by the tensile strength of the concept of reserved control. A right or opportunity to enter the leased premises to perform the covenant is, of course, something else, since the basis of liability is negligence. There is no problem in a case such as this, where the tenant calls for repairs and thus invites the landlord to enter for that purpose.

Before discussing the trial court's handling of this case, we should comment upon another exception to the rule of nonliability. Aware of the gap between judicial principles and the needs of modern housing practices, many legislatures enacted measures imposing duties to repair upon the owner

of multiple dwellings. See *Feuerstein and Shestack, "Landlord and Tenant—The Statutory Duty to Repair,"* 45 *Ill. L. Rev.* 205 (1950); *Annotations,* 93 *A. L. R.* 778 (1934) and 17 *A. L. R.* 2d 704 (1951). The statutes differ and have received varying interpretations as appears in the references just cited.

█ Our Tenement House Act, *R. S.* 55:1–1 *et seq.,* is comprehensive legislation intended to assure safe habitation, and it places responsibility where the Legislature has concluded it belongs. *R. S.* 55:7–1 provides in part:

"Every tenement house and all the parts thereof, shall be placed and maintained in good repair * * *."

*R. S.* 55:11–3 provides:

"Every joint or several owner of any tenement house shall be jointly and severally liable for any violation of any provision of this subtitle and every lessee of a whole tenement house, or of the building or structure erected on the same lot with a tenement house, shall be jointly and severally liable with the owner or owners of the fee of such tenement house, building, structure and lot for any violation of any provision of this subtitle."

Our statute does not expressly authorize a suit by one injured by reason of a landlord's violation and hence does not create a statutory cause of action as that term is understood. Rather, in harmony with our usual approach to statutes of this kind, the act is deemed to establish a standard of conduct, and to permit the intended beneficiaries to rely upon a negligent failure to meet that standard in a common law action for negligence. *Evers v. Davis,* 86 *N. J. L.* 196 (*E. & A.* 1914); *Daniels v. Brunton, supra* (7 *N. J.* 102).

█ The duty to maintain in good repair provided in *R. S.* 55:7–1, *supra,* relates to the tenement house "and all the parts thereof." The phrase is sweeping. See *Altz v. Leiberson,* 233 *N. Y.* 16, 134 *N. E.* 703 (*Ct. App.* 1922). It is not limited to common areas, nor to such parts as may be in the landlord's control, actual, attenuated or fictional.

Nor is it limited to those features of the building or dwelling units which the statute requires the landlord to furnish. Rather the duty to maintain in good repair embraces "all parts" which the landlord in fact provides. The statute was intended to make a needed adjustment in the law of landlord and tenant, and there is no reason why we should hesitate to give full effect to the legislative will. The kitchen cabinets are clearly a part of the building. We are satisfied the statute required defendant to maintain them in good repair.

Accordingly, the issue for the jury in this case should have been, not whether defendant contracted to assume an obligation to repair, but rather whether by the lease defendant successfully relieved itself of its statutory duty. The trial court withdrew the statutory duty from the jury's inquiry into the meaning of the lease and thus required a finding that defendant in fact agreed by its lease to make the repair. The trial court's treatment of the case of course redounded to defendant's advantage, and hence our disagreement with it does not aid defendant on this appeal.

We point out parenthetically that the question whether the landlord could by contract relieve itself of its statutory duty was not raised or argued. See *Feuerstein and Shestack, supra* (45 *Ill. L. Rev.*, at 220); *Kuzmiak v. Brookchester, Inc.*, 33 *N. J. Super.* 575 (*App. Div.* 1955). We note this possible question, not to intimate a view either way, but rather to make it clear that since we are satisfied the judgment in the trial court should be sustained on the thesis upon which it was rendered, we need not and have not considered the question.

## II.

Ordinarily the construction of a written agreement is a matter for the court, but where its meaning is uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation, the meaning of the doubtful provisions should be left to the jury. *Newark Publishers' Ass'n. v. Newark Typographical Union*, 22 *N. J.* 419, 427 (1956);

*Spinelli v. Golda*, 6 *N. J.* 68, 79 (1950); *Jennings v. Pinto*, 5 *N. J.* 562, 570 (1950); 3 *Williston, Contracts (rev. ed.* 1936), § 616, *p.* 1772. Where ambiguity exists, the subsequent conduct of the parties in the performance of the agreement may serve to reveal their original understanding. *Journeymen Barbers, etc., Local 687 v. Pollino*, 22 *N. J.* 389, 395 (1956). The trial judge correctly found the lease to be ambiguous with respect to the landlord's obligation and hence admitted evidence of the parties' practical construction of its terms. In those circumstances, it was proper to submit the issue of the meaning of the contract to the jury as one of fact.

The lease contains no clearcut promise by the tenant or landlord with respect to the repair of the defect here involved. Rather there are expressions pointing both ways. In analyzing the agreement, we should be mindful of the rule that ambiguities are to be taken most strongly against the draftsman, here the defendant. *Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer District Authority*, 18 *N. J.* 294, 302 (1955); *Moses v. Edward H. Ellis, Inc.*, 4 *N. J.* 315, 322 (1950).

The pertinent provisions are (italics added):

"1. That the Lessee shall take good care of the apartment and its fixtures, and *suffer no waste or injury;* * * * and shall at his or her own expense and cost make and do *all repairs required to* walls, ceilings, paper, plumbing work, ranges, pipes and *fixtures* belonging thereto, *whenever damage or injury to the same shall have resulted from misuse or neglect of the Lessee;* * * * and at the end or other expiration of the term, shall deliver up the demised premises in good order and condition, damage by the elements excepted; * * *."

* * * * * * * *

"7. That * * * the Lessor or his or her agent shall also be permitted, at any time during the term, to visit and examine them [the demised premises] at any reasonable hour of the day, and *whenever necessary for any repairs to same or any part of the building.*"

"8. That all *fixtures* and personal property in the apartment at the time of the taking of possession by the said Lessee, shall remain at the expiration of the term and *if lost, broken or damaged by the Lessee*, shall be replaced or paid for by him or her."

* * * * * * * *

"21. * * * Neither shall there be any abatement or diminution of rent *because of making repairs*, improvement or decorations to the demised premises after the date above fixed for the commencement of the term, it being understood that rent shall, in any event, commence to run at such date so above fixed."

"The tenants do hereby accept the above premises as is. Any painting or decorating necessary or required in this apartment during the full term of this lease shall be done at the cost and expense of the tenants."

The paragraph militating most strongly for defendant is paragraph 1. The tenant is required to "take good care of the apartment and its fixtures, and suffer no waste or injury." It cannot be said that the evidence unequivocally demonstrates that plaintiffs suffered "injury" to the cabinet door. On the contrary, plaintiffs offered expert testimony that the cabinet was improperly hung, being out of plumb, so that the door did not fully close and excessive tension on the upper hinge ultimately caused the fall. Mrs. Michaels did testify that the hinge was corroded, but apart from the doubt that corrosion constitutes "injury," there was no direct proof that corrosion led to the incident. Whether the term "waste" could include a failure to repair a structural defect, 32 *Am. Jur., Landlord and Tenant,* § 780, *p.* 666, we need not consider, since specific reference immediately follows in paragraph 1 to the subject of repair of "fixtures," the tenant being obligated to repair "whenever *damage or injury* to the same shall have resulted from *misuse or neglect* of the Lessee." We doubt that there was any evidence of "misuse" by the tenants or that any *"damage or injury"* to the fixture resulted from any "neglect" by them. At most there was evidence of a failure to repair "damage or injury" which was otherwise caused. At any rate, since the trial judge expressly charged that defendant must prevail "if you find that the state of disrepair * * * resulted from the misuse or the neglect of the tenant," the verdict for plaintiffs constituted a finding for them on that question. It may be noted that the general flavor of the covenants applicable to the tenants is suggestive of culpable

conduct, either intentional, or negligent, affirmatively productive of damage or injury to the premises or fixtures. Thus paragraph 8, again dealing with fixtures, required the lessees to replace them "if lost, broken or damaged by the Lessee."

Hence the jury could have found, and presumably did, that the defect in question did not fall within the lessees' covenant to repair. To sustain the recovery on the theory of the trial, it must, however, be found that the landlord obligated itself to repair the defect. This brings us to paragraphs 7 and 21. In paragraph 7 the landlord reserved the right to enter "whenever necessary for any repairs to same [the demised premises] or any part of the building," and paragraph 21 provides that there shall be no "abatement or diminution of rent because of making repairs, * * * to the demised premises after the date" of the lease, which provision seems unnecessary if the repairs contemplated were repairs by the tenant. Although these covenants do not in affirmative terms express an undertaking to repair, yet the obligation to do so may nonetheless arise by implication. See *Newark Publishers' Ass'n v. Newark Typographical Union, supra* (22 *N. J.*, at *page* 427); *Silverstein v. Keane,* 19 *N. J.* 1, 11–12 (1955); *Dulberger v. Radli,* 105 *N. J. L.* 126, 127 (*E. & A.* 1928). Reasonable men reading these provisions might well conclude that the landlord assumed responsibility for such repairs as were not embraced in the tenants' covenants and that the defect in question was not within them. Surely it cannot be said that the agreement may be construed only in support of defendant's view.

When we look to the actual performance of the parties, we find conduct which persuasively justifies the conclusion that the parties did intend by the writing that the landlord make repairs. Defendant furnished a maintenance crew. On prior occasions, in response to plaintiffs' calls, defendant repaired a lock, a leaking radiator, and a bathroom light switch. The evidence would further warrant a finding that

defendant's agent readily agreed to repair the cabinet door, and it is undisputed that after the occurrence defendant did replace it.

We should note that the unnumbered paragraph, the last quoted above from the lease, is in fact a typewritten addition applicable to painting and decorating, and hence the words "as is" could well be understood to be limited to that subject.

Hence we find no error with respect to defendant in the trial court's handling of the issue.

## III.

The remaining question is whether the trial court erred in charging that defendant's unexplained failure to produce two of its employees permitted an inference that their testimony would have been unfavorable to. it. Mrs. Michaels testified to conversations with Brown, the superintendent, and Le Pre, the manager of the development, with respect to the repair of the cabinet door. They were the employees to whom the charge referred. They could have testified at least with respect to one issue in the case, whether Mrs. Michaels had given notice of the defect and had been assured the repairs would be made.

It would be natural for defendant to call its employees to meet the testimony and from that failure it is fair to permit the jury to infer their testimony would have been unfavorable to defendant, in the absence of some explanation as to why they were not called. No explanation was offered, nor was the truth of plaintiffs' testimony conceded at the trial. Defendant here urges (1) the employees were equally available to both sides, and (2) their testimony would have been cumulative to that given by plaintiffs. As to the first proposition, it is inapplicable where the witnesses are employees of the party, at least when there is no showing of bias against the employer. As to the second, if defendant really means their testimony "would at most have been cumulative to that given by the plaintiffs," to quote from

the brief, we see neither error nor harm, because the charge would merely have permitted the jury to draw an inference to that very effect. The instruction comported with existing authorities. *Jorgensen v. Pennsylvania Railroad Co.*, 38 *N. J. Super.* 317, 339 (*App. Div.* 1955), certification denied 20 *N. J.* 308 (1956); *Schultz v. Hinz*, 20 *N. J. Super.* 346, 351 (*App. Div.* 1952); *O'Neil v. Bilotta*, 18 *N. J. Super.* 82, 86 (*App. Div.* 1952), affirmed, 10 *N. J.* 308 (1952).

The judgment of the Appellate Division is reversed and the judgment of the Law Division in favor of plaintiffs is affirmed.

HEHER, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*For affirmance*—None.