50 N.J. Super. 81 (1958)
141 A.2d 71
CARMELA SARACINO, PLAINTIFF-RESPONDENT,
v.
CAPITAL PROPERTIES ASSOCIATES, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1958.
Decided May 1, 1958.
*83 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William S. Grimaldi argued the cause for defendant-appellant (Mr. Carmine Grimaldi, attorney).
Mr. William V. Breslin argued the cause for plaintiff-respondent (Messrs. Landi & Madden, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
Carmela Saracino, a monthly tenant occupying an apartment in a multi-family dwelling house at No. 238 Day Avenue, Cliffside Park, New Jersey, owned by the defendant, was injured by the fall of the kitchen ceiling in her apartment. She recovered a verdict from a jury in the Bergen County Court for $2,500, based upon *84 the claim of negligence of the defendant in failing to repair the ceiling after the defect had been frequently called to its attention and it had agreed to repair it. Defendant appeals from the consequent judgment, arguing that it was not under any duty to repair and that the court erred in denying its motions for a judgment of dismissal and for a new trial.
Plaintiff has been a month-to-month tenant in the premises since December 1950, the rent being payable on the first day of the month. The plaintiff testified that she had complained to the prior owner of the premises for a "long time" and that the ceiling was in its deteriorating condition for about "two or three months" before December 1, 1954, when the defendant became the owner and landlord. On that day the defendant's agent called on the plaintiff for the rent. She testified that she called his attention to the ceiling which was wet, cracked and peeling, and that he promised and agreed to repair it and repeated this promise when he called for the rent the following months. Notwithstanding these promises, the ceiling was not repaired by the defendant until after the accident on February 10, 1955. On that day, half of the kitchen ceiling fell upon plaintiff's head and the doctor who responded to a call found her upon the floor.
In its answer and at the trial defendant denied that it was under a duty or had agreed to repair the ceiling, denied negligence, and asserted that plaintiff was contributorily negligent and had assumed the risk. The pretrial order states that "Ownership and control of premises by defendant are admitted * * *." However, it is not clear whether this refers to the fact that the defendant was merely the title owner maintaining the entire premises, or whether it refers to direct control over the plaintiff's apartment.
Irving Kapp, the agent who collected the rent from the plaintiff on behalf of the defendant and who was also an officer and director of the defendant corporation, testified that the first time that he learned of anything concerning the ceiling was on February 10, the date that the accident *85 happened. He did say, however, that he had been in the kitchen prior to that day but did not see the condition as testified to by the plaintiff.
The record does not disclose the number of families who occupy the premises. The complaint states that plaintiff occupies apartment No. 7 on the first floor. Plaintiff testified to an inspection of her apartment by an inspector from the Bureau of Tenement House Supervision; and the defendant called as a witness Charles B. Rooney, an inspector, who testified that on September 28, 1954 he made an inspection of various apartments in connection with the sale of the property. He stated "There are three apartments in the basement and there are four apartments on the second floor." Counsel for the plaintiff asserted at the oral argument that the building housing the plaintiff's apartment was a structure that came within the provisions of the Tenement House Act, and this was not controverted by counsel for the defendant. R.S. 55:1-24.
At the trial the question of liability was predicated upon whether or not there was a promise to the plaintiff to repair the ceiling made by the agent of the defendant when the latter took over active management of the premises and whether that promise was integrated in the tenancy agreement of the parties. This involved a question of fact  whether the conversation had actually taken place; and also a question of law  whether the defendant's promise was binding and laid the foundation for an action in tort for its breach.
Quite apart from the obligation of a landlord to repair leased premises pursuant to a covenant to repair, our Supreme Court in Michaels v. Brookchester, Inc., 26 N.J. 379, decided on March 31, 1958, has deliberately stated, by considered dictum, that pursuant to the Tenement House Act, R.S. 55:1-1 et seq., a landlord is under an obligation to maintain in good repair "all the parts" (R.S. 55:7-1) of any structure falling within the purview of that statute, breach of which through the injury of a tenant will give rise to an action for the damages sustained. In the Michaels *86 case, supra, "all parts" was taken to include a kitchen cabinet. A ceiling is much more a part of the building and we are satisfied that the statute required the defendant to maintain it in good repair. Thus the landlord was always under a legal obligation to maintain plaintiff's premises, irrespective of any contractual obligation, and accordingly became liable for the injuries to the plaintiff if it was proved that the failure to repair was negligence. Since the issue of negligence was in fact submitted to the jury, that is, whether the defendant had notice of the condition of the ceiling and a reasonable time had been afforded to the defendant to make the repairs, and the jury having resolved these questions in favor of the plaintiff, it follows that the judgment for the plaintiff in this respect is conclusive.
Although the question of liability under the Tenement House Act was not presented to the trial court for its consideration, on oral argument the attention of both counsel was directed to this issue and to the Michaels case, supra, and the defendant has since submitted its memorandum dealing with that question. It is clear that the obligation imposed by R.S. 55:7-1 was in effect when the ceiling fell. L. 1904, c. 61, § 144, p. 131. This being a question of law, it is appropriate that we determine the existence of liability on this basis.
Additionally, since the Legislature has stated that tenement houses shall be maintained in good repair as a matter of public policy, cf. Daniels v. Brunton, 9 N.J. Super. 294, 299 (App. Div. 1950), affirmed 7 N.J. 102 (1951), it is not inappropriate that we consider the obligations thereby imposed, notwithstanding the question is raised for the first time on this appeal. City of Newark v. Pulverman, 12 N.J. 105, 108 (1953); State v. Laurel Mills Sewerage Corp., 46 N.J. Super. 331, 334 (App. Div. 1957).
We now consider the theory of liability proposed before the trial court. The basic premise as between landlord and tenant is that the doctrine of caveat emptor applies; there is no implied undertaking upon the part of the landlord to maintain the leased premises. Bauer v. 141-149 Cedar Lane *87 Holding Co., 24 N.J. 139, 145 (1957); Michaels v. Brookchester, Inc., supra; 2 Stevenson, Law of Negligence (1954), sec. 489, pp. 733-735. The question, then, is whether this status has been modified by any contractual undertaking, aside from the statutory obligation.
The trial judge made the following charge to the jury concerning the question of whether the plaintiff and defendant, through its authorized agent, of which there is no question, entered into this agreement to repair the ceiling:
"When a condition exists whereby there is a tenancy between a landlord and a tenant from month to month with an indefinite term as to how long the relationship is to exist, it is the law of this State that the tenant is under an obligation to make all interior repairs. * * *
Now such being the law, you naturally would say, `How can this plaintiff expect to recover if it was not the duty of the landlord to fix this ceiling? How can the plaintiff expect to recover?' Well, the plaintiff says that there was an agreement which this particular landlord made in December, 1954 that he, Mr. Kapp representing the Capital Properties Associates ownership, would fix the ceiling; that he had received notice prior to February 10, 1955 as to the condition of the ceiling and that in fact he had promised to repair it. That is an allegation of the plaintiff and it is the only way in which the plaintiff can expect to hold the defendant in this case. So the plaintiff is under the duty of establishing that to your satisfaction by the fair preponderance of the evidence. That is the plaintiff's obligation, and you jurors have to determine what took place."
This presented a factual question for the jury's determination. The legal question is whether, assuming such an understanding, it was binding.
Although the authorities are in disagreement over the nature of a month-to-month tenancy, see 51 C.J.S. Landlord and Tenant § 145, pp. 746-747; 2 Harper and James, Law of Torts (1956), § 27.16, p. 1507, n. 6; 1 American Law of Real Property (1952), § 3.23, p. 221 et seq., New Jersey follows the view that such a tenancy is a continuing one and not a new relationship for each month. Barwick v. Gendel Realty Co., 11 N.J. Super. 6, 9 (App. Div. 1950); cf. Jador Service Co. v. Werbel, 140 N.J. Eq. 188 (E. & A. 1947). Therefore, it would seem *88 that when a stranger purchases the reversion and becomes the new landlord, the tenancy continues uninterrupted based upon privity of estate.
Nevertheless, this would not preclude the new landlord and the tenant under a pre-existing month-to-month tenancy from entering into a new and distinct contractual relationship. Cf. Harenburg v. August, 119 N.J.L. 83 (E. & A. 1937); Barwick v. Gendel Realty Co., supra. The question in the present case is whether it can be fairly said that the jury verdict determined whether there was a new contractual relationship between the defendant and the plaintiff inclusive of an integral provision that the defendant as landlord should repair the kitchen ceiling.
The testimony is consistent either with a conclusion that the contract negotiated the first day the defendant's agent called for the rent was limited to a continuation of the month-to-month tenancy on the basis of the previous rental, the promise to repair being an incidental gratuitous undertaking not adequately supported by consideration, or, on the other hand, with the conclusion that the promise to repair was integral to the new contract and supported by the implied agreement by the plaintiff to continue as a tenant rather than exercise her right to give notice and vacate. Unfortunately, however, these alternative conclusions from the testimony were not presented to the jury as issues for their determination in the charge of the court. The jury was told in effect that it might decide in favor of the plaintiff if it found as a fact that defendant's agent promised that the ceiling would be repaired and knew of its condition of disrepair prior to the date of the accident.
We are consequently of the opinion that the judgment in favor of the plaintiff cannot rest on the theory of a new agreement between the parties inclusive of a covenant to repair. In the Barwick case, supra, the facts disclose that the plaintiff was a new tenant and that case is therefore distinguishable from the instant case.
Nevertheless, we conclude that the judgment should stand, the necessary findings of fact implicit in the jury verdict *89 in favor of the plaintiff being fully supportive of a recovery under the theory of the Michaels case, supra, to wit, the failure on the part of the owner of a tenement house to keep in good repair one of "the parts" of the tenement house structure, the ceiling of a rented apartment. The failure to repair was negligent in that, as necessarily found by the jury under the charge of the court, the condition was in existence to the knowledge of the owner for a period of time justifying the conclusion that the default constituted negligence.
The defendant also argues that the court erred in denying its motion for a new trial, pointing out that plaintiff's testimony at the trial contradicted certain of her answers to interrogatories. Concerning the inconsistency, the trial judge in his charge to the jury, to which there was no objection, correctly instructed them with respect to their duty to determine the credibility of the plaintiff.
There was ample evidence of defendant's duty to repair the ceiling and of negligence in the failure to perform to support the jury verdict, which is not excessive. R.R. 1:5-3(a); Nelson v. Eastern Air Lines, 128 N.J.L. 46, 55 (E. & A. 1941); Tessmar v. Grosner, 23 N.J. 193, 204 (1957); Moore v. Public Service Coordinated Transport, 15 N.J. Super. 499, 505 (App. Div. 1951).
Affirmed.