147 N.J. Super. 293 (1977)
371 A.2d 296
DELMAT CORPORATION, PLAINTIFF-APPELLANT,
v.
MARIE KAHN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1977.
Decided February 9, 1977.
*295 Before Judges LYNCH, MILMED and ANTELL.
Mr. Walter R. Cohn, attorney for appellant (Mr. Norman A. Feinstein on the brief).
Ms. Joan Pransky, Essex County Legal Services (Mr. Robert L. Doris, Jr., Director), attorney for respondent (Ms. Pransky, Mr. James A. Tarella and Mr. John D. Atlas, on the brief).
The opinion of the court was delivered by MILMED, J.A.D.
Plaintiff, owner of the nine-family apartment building at 433 William Street in East Orange, appeals from the dismissal of its complaint which sought possession of an apartment occupied by defendant in the building.
The facts may be briefly summarized. In November 1973 the parties entered into an oral month-to-month tenancy and defendant-tenant paid to plaintiff-landlord a security deposit of $220. Plaintiff failed to comply with the 1973 amendment to N.J.S.A. 46:8-19.[1] Thereafter, in accordance *296 with the provisions of that statute, defendant notified plaintiff that the security money was to be applied on account of the January 1975 rent for the apartment.[2] Subsequently, plaintiff served defendant with a notice that on March 1, 1975 she (defendant) was to quit and vacate the apartment which she occupied, but that if she remained in possession after that date, she would be required to pay to plaintiff a security deposit in the amount of $367.50. Defendant was thereafter served with another notice, this one dated April 14, 1975, that she was to quit and vacate the premises on June 1, 1975 and that her "present tenancy" was
* * * terminated because you have failed to pay to landlord, security deposit in the amount of $367.50 after you were served with a valid notice to quit, with a reasonable change in the terms of your tenancy  that being the payment of security deposit.
The trial judge held that the landlord's demand for the further security deposit was unreasonable and unwarranted. We agree. N.J.S.A. 2A:18-61.1, N.J.S.A. 46:8-19.
As pointed out by this court in Saracino v. Capital Properties Associates, Inc., 50 N.J. Super. 81 (App. Div. 1958):
Although the authorities are in disagreement over the nature of a month-to-month tenancy, see 51 C.J.S. Landlord and Tenant § 145, pp. 746-747; 2 Harper and James, Law of Torts (1956), § 27.16, p. 1507, n. 6; 1 American Law of Real Property (1952), § 3.23, p. 221 et seq., New Jersey follows the view that such a tenancy is a continuing one and not a new relationship for each *297 month. Barwick v. Gendel Realty Co., 11 N.J. Super. 6, 9 (App. Div. 1950); cf. Jador Service Co. v. Werbel, 140 N.J. Eq. 188 (E. & A. 1947). * * * [at 87]
See also, Stamboulos v. McKee, 134 N.J. Super. 567, 570 (App. Div. 1975).
Plaintiff urges that we cast aside this judicial approach to a month-to-month tenancy in this case in favor of a "rule" which would provide "that a month-to-month tenancy expires at the end of each month and is renewed on the first day of the succeeding month." We discern no compelling reason for doing so. The above quoted view, expressed in Saracino and reiterated in Stamboulos, is eminently sound. Furthermore, the 1973 amendment to N.J.S.A. 46:8-19[3] specifically provides in circumstances such as are here present that after notifying the landlord that the "security money be applied on account of rent payment * * * due or to become due from the tenant, * * * thereafter the tenant shall be without obligation to make any further security deposit during the term of his lease and the person receiving the money so deposited [the landlord] shall not be entitled to make further demand for a security deposit." We are satisfied that the term "lease" as used in the statute is intended to cover both written and parol leases, in short, "[a]ny agreement which gives rise to [a] relationship of landlord and tenant." Black's Law Dictionary (rev. 4 ed. 1968), at 1035, 1036.
Beyond this, "good cause" for eviction under N.J.S.A. 2A:18-61.1 has not been shown. See also N.J.S.A. 2A:42-10.10(a) and (d). The dissent questions the "fairness" of our reference to this latter statute, stating, in part: "This is the `Reprisal' Act, and the question of whether this action was taken by the landlord as a form of reprisal was never even suggested in the county district court, by the court or by defendant, who was represented by counsel." Our colleague *298 overlooks several things. N.J.S.A. 2A:42-10.10 et seq., L. 1970, c. 210, clearly affects the rights and duties of the landlord and tenant in this case. That Act by its terms applies "to all rental premises or units used for dwelling purposes except owner-occupied premises with not more than two rental units." N.J.S.A. 2A:42-10.13. We note specifically the following pertinent provisions of the 1970 legislation:
1. No landlord of premises or units to which this act is applicable shall serve a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise:
a. As a reprisal for the tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States; or

* * *
d. On account of the tenant's failure or refusal to comply with the terms of the tenancy as altered by the landlord, if the landlord shall have altered substantially the terms of the tenancy as a reprisal for any actions of the tenant set forth in subsection a, b, and c of section 1 of this act. Substantial alteration shall include the refusal to renew a lease or to continue a tenancy of the tenant without cause. [N.J.S.A. 2A:42-10.10 (a) and (d)].

* * *
3. In any action or proceeding instituted by or against a tenant, the receipt by the tenant of a notice to quit or any substantial alteration of the terms of the tenancy without cause after:
a. The tenant attempts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey, or its governmental subdivisions, or of the United States; * * *

* * *
d. * * * shall create a rebuttable presumption that such notice or alteration is a reprisal against the tenant for making such attempt, report, complaint * * *. [N.J.S.A. 2A:42-10.12]
Appellant landlord clearly understands the basis for the decision of the trial judge. In the brief submitted on its behalf on this appeal, counsel points out, among other things:
The Court below recognized that a month-to-month residential tenancy can be terminated provided that good cause exists and can be proven (T 10. 7-14). However, it held that in view of the particular *299 factual situation and the security deposit law, N.J.S.A. 46:8-19, plaintiff-landlord's demand for a security deposit was unreasonable[4] (T. 7.11-22). Consequently, it ruled that the tenancy was not terminated (T 9.22-25).
Whether the trial judge used the word "reprisal" or not is of no consequence. He was not functioning in a vacuum. He knew, as did both parties, that the landlord's demand for the further security deposit followed swiftly at the heels of the tenant's notice to the landlord to apply her $220 security deposit on account of the January 1975 rent for the apartment. Counsel for the landlord, reciting to the trial judge "the facts which we stipulate," included the following:
MR. COHN: The tenant paid a security deposit of $220.00 when she  In November of 1973. The tenant sent a notice to the landlord subsequent to that time, saying that the landlord had not complied with the security deposit law, and this security deposit was applied to rent for January, 1975, and that pursuant to the statute in accordance with the allegation of the tenant, and in addition, the tenant paid $25.00 to the landlord in January of 1975, thus paying her rent at that time. There were no further actions by the landlord or the tenant with respect to the tenancy until the service of the two (2) notices which have been marked in evidence.
The landlord here was prohibited from serving upon the tenant the notices to quit, and from instituting this action for possession, by reason of the tenant's failure (or refusal) to comply with the terms of the tenancy, altered by the landlord as a reprisal for the tenant's efforts to enforce her rights under N.J.S.A. 46:8-19. N.J.S.A. 2A:42-10.10 (a) and (d). The rebuttable presumption that such notices to quit and alteration of the terms of the tenancy without cause constituted a reprisal, N.J.S.A. 2A:42-10.12 (d), was clearly not overcome by the landlord.
Beyond this, if the landlord were permitted to immediately make a new demand for a security deposit after the tenant had pursued her remedy under the 1973 amendment *300 to N.J.S.A. 46:8-19 with respect to the old security deposit, the sanction provided by that statute[5] would be meaningless. In the circumstances, the trial judge properly concluded that "[i]n the face of" N.J.S.A. 46:8-19, the requirement that the tenant pay a security deposit of $367.50 if she were to remain in possession of the apartment, was "unconscionable and unreasonable." The complaint was properly dismissed.
Affirmed.
ANTELL, J.A.D. (dissenting).
The statute under which the tenant was permitted to apply the security deposit against rent, N.J.S.A. 46:8-19, relieves the tenant thereafter from making any further deposit "during the term of his lease." Its clear implication is that at the expiration of "the term" the landlord may demand and receive the "further security deposit" as part of a new letting.
I agree that by using the word "lease" the Legislature did not intend that tenants' rights should be determined by whether they held under a written or parol lease, or to distinguish between those who held for a fixed term and others who held for an indefinite term. But neither did it intend to discriminate between landlords on this basis either. My disagreement with the majority stems from its treatment of a month-to-month tenancy as one which cannot be terminated and therefore one under which a landlord is permanently foreclosed from taking a further deposit. As I have said, there is no reason for the Legislature to have placed such landlords in a different position that those are in who rent for a fixed term.
While a month-to-month tenancy is continued merely by the tenant remaining in possession and paying rent, Barwick *301 v. Gendel Realty Co., 11 N.J. Super. 6, 9 (App. Div. 1950), N.J.S.A. 46:8-10, the relationship may be terminated at any time by either party giving one month's notice, N.J.S.A. 2A:18-53; N.J.S.A. 2A:18-56, subject, of course, to N.J.S.A. 2A:18-61.1. This is fundamental, and is even recognized in the decisions cited by the majority to support the proposition that a month-to-month tenancy is a "continuing one."
Thus, where the landlord gave a proper notice to quit and demand for possession at the end of the month, unless the tenant paid an increased rental commencing the beginning of the following month, the holding over of the tenant created a new tenancy at the increased rental. [Stamboulos v. McKee, 134 N.J. Super. 567, 571 (App. Div. 1971).][1]
The cases relied upon by the majority are inapplicable to the issue before us in any event. Except for Jador Service Co. v. Werbel, 140 N.J. Eq. 188 (E. & A. 1947), they deal only with the question of whether obligations of repair and maintenance expressly assumed by a landlord during an earlier rental period of a month-to-month tenancy are viable in a later period when the tenant sustains a personal injury attributed to the landlord's negligence. It was in this context that the relationship was said to be a "continuing one."
I discern no sound reason why plaintiff is not entitled to receive its further security deposit. The purpose of this provision is to compel landlords to comply with the law, and it would appear that this has been accomplished. The tenant has had the use of the security money during this interval, and the landlord has been deprived of its availability. In my view, "good cause" for eviction has been shown within the meaning of N.J.S.A. 2A:18-61.1. Surely *302 the requirement that security moneys be deposited is a "reasonable change[s] of substance" under subsection (i) thereof: the amount demanded is nothing more than what is specifically allowed to the landlord under N.J.S.A. 46: 8-21.2.
Unfortunately, it is only by this eviction action that this landlord can end "the term" of the lease and thereby put itself in the same position as a landlord at the expiration of a fixed term under the statute. Obviously, it is not interested in recovering possession of the apartment, but only in obtaining performance by the tenant of this new condition of the tenancy.
The purpose of the majority's reference to N.J.S.A. 2A:42-10.10(a) and (d) is unclear. This is the "Reprisal" Act, and the question of whether this action was taken by the landlord as a form of reprisal was never even suggested in the county district court, by the court or by defendant, who was represented by counsel. The finding of the trial judge that the demand for security was "unconscionable and unreasonable" was made in a completely unrelated setting. The judge had expressed the opinion that "a landlord does not need to have a security deposit." Counsel replied that unless it was found that the landlord's proposed change in terms and condition was unreasonable under N.J.S.A. 2A:18-61.1(i), the landlord was entitled to terminate the tenancy and invite a new one upon the changed conditions. It was then that the court, in deference to counsel's argument, made its finding that the demand for security was "unconscionable and unreasonable." It never intimated that the demand was made or the suit was brought as a reprisal. In fact, the court expressly noted, "Well, I suppose there's no other way you can do it except to sue for holdover for not paying the security deposit, or for not complying with the rules." The reference clearly was to the fact that this was the only way open to plaintiff to establish its legal right and reflected the court's understanding that the suit *303 was not brought to retaliate against the tenant for exercising her rights.
I think it inconsistent with acceptable standards of fairness to rationalize this result in terms of the "Reprisal" Act in a case such as this where the action of the landlord is so clearly not a reprisal and where, in any event, it has had no opportunity to create a record on the question.
I would reverse.
NOTES
[1] L. 1973, c. 195, § 1, the amendment reading as follows:

In the event the person receiving a security deposit fails to notify the tenant of the name and address of the banking institution or savings and loan association in which the deposit of such security is made, and the amount thereof, within 30 days after receipt of same from the tenant, the tenant may give written notice to the person receiving the same that such security money be applied on account of rent payment or payments due or to become due from the tenant, and thereafter the tenant shall be without obligation to make any further security deposit during the term of his lease and the person receiving the money so deposited shall not be entitled to make further demand for a security deposit.
[2] Defendant also paid an additional $25 to supplement the deposit, since the monthly rent at the time was $245.
[3] See n. 1.
[4] The trial judge found that the landlord's demand for the security deposit was "unconscionable and unreasonable."
[5] "* * * thereafter the tenant shall be without obligation to make any further security deposit during the term of his lease and the person receiving the money so deposited shall not be entitled to make further demand for a security deposit." (Emphasis supplied)
[1] I am not unmindful that on the previous page McKee held that the tenancy is not "terminated merely by the giving of the notice." However, the court was addressing itself to the crucial issue there presented which was whether the tenancy terminated upon the giving of the notice or upon its effective date.