SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.*

**Baldwin Shields v. Ramslee Motors (A-53-18) (081969)**

**Argued October 7, 2019 -- Decided January 23, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

The Court considers whether the owner of a commercial property owes its tenant's invitee a duty to clear snow and ice from the property's driveway while the property is in the sole possession and control of the tenant.

After plaintiff delivered an envelope to Ramslee Motors, a used car dealership, he slipped and fell on snow and ice on the driveway, suffering injuries. The driveway is adjacent to the public sidewalk but is separated from it by a fence.

Ramslee Motors leased the property for its dealership. The lease agreement with its landlord provided that "TENANT shall be solely responsible for the maintenance and repair of the land and any structure placed on the premises . . . as if TENANT were the de facto owner of the leased premises." The lease reserved for the landlord the right to enter the premises to make inspections and repairs, as well as "to enter onto the leased premises at any time in the event of an emergency." The owner of Ramslee Motors testified that he was responsible for clearing snow and ice at the property and that he maintained equipment at the property to do so.

Plaintiff filed a complaint against Ramslee Motors and the landlord; he settled with Ramslee Motors. The landlord moved for summary judgment, and the trial court granted its motion. The Appellate Division reversed, finding that the lease was silent as to who was responsible for snow and ice removal. Then, finding no "distinction between a sidewalk and an open driveway used with regularity," the Appellate Division held that the landlord had a non-delegable duty to "ensure that the driveway abutting the sidewalk was clear of snow and ice." The Court granted certification. 236 N.J. 566 (2019).

**HELD:** Ramslee Motors's lease agreement directly addressed responsibility for maintenance of the property, which includes removal of snow and ice. That duty rested solely with Ramslee Motors, whether based on the lease or common law. Ramslee Motors retained complete control over the premises where plaintiff fell and was exclusively responsible for plaintiff's injuries. The Court declines to hold the landlord responsible for property over which it had relinquished control.

1

1. The lease in this case was clear as to which party is responsible for maintenance of the premises. The parties agreed to place that responsibility solely on the tenant. "Maintenance" includes the responsibility to remove snow and ice based on the plain meaning of that term. The provision through which the landlord retained the right to enter the property without notice for the purpose of making repairs does not change that allocation of responsibility. First, the lease specifically stated that the right to enter did not create "an obligation on the part of the Landlord to make such repairs." Second, reservation of a right to enter is not a covenant to make repairs. (pp. 8-10)

2. The Court reviews the genesis and development of the duty to clear sidewalks and notes that it was declared a non-delegable duty in Vasquez v. Mansol Realty Associates, Inc., 280 N.J. Super. 234, 238 (App. Div. 1995). The Appellate Division determined that Vasquez governs here, reasoning that the driveway was not distinct from the sidewalk and that the same non-delegable duty should therefore apply. The Court does not agree. First, the duty to maintain the driveway was always a private duty, with the potential of private recovery; the logic that led to the imposition of the duty vis-à-vis sidewalks does not apply to private property. Nor do the physical characteristics of the property support the appellate court's conclusion: the driveway is separated from the sidewalk by a gate and cannot therefore be readily accessed by passers-by when not expressly opened by Ramslee Motors. In fact, the Vasquez panel itself suggested that the duty it prescribed would not apply under the circumstances presented here, given that the landlord here has vested the tenant with exclusive possession. See id. at 237. (pp. 11-13)

3. Under the traditional liability analysis specific to the landlord-tenant context, a landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord retains control. Here, the landlord did not enjoy the sort of control over the subject driveway that would give rise to a duty of care. (pp. 13-15)

4. In Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993), the Court departed from the traditional, categorical approach to liability based on the status of the plaintiff and provided four factors to consider in determining whether a duty of care exists -- "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." On the facts of this case, the Court reaches the same result by application of the Hopkins factors that it did considering control. First, the landlord here had no relationship with plaintiff. Second, it would not be fair to place responsibility for removal of snow and ice -- transient conditions -- on a commercial landlord that lacks control over the property. Third, it would be impractical to require the landlord here to prevent the harm accompanying temporarily slippery conditions caused by weather on property when it does not have access to information about the condition of the property. And fourth, holding a landlord liable for snow and ice on demised property would not serve any public policy interest because plaintiff can recover from Ramslee Motors. (pp. 15-18)

2

**The judgment of the Appellate Division is REVERSED and the grant of summary judgment is REINSTATED.**

**JUSTICE ALBIN, concurring in the judgment and dissenting in part,** disagrees with any seeming pronouncement that absolves the landlord of the duty to make reasonable efforts to repair a dangerous condition on the property when the landlord knows or should know of the danger, when the landlord retains authority to remove the danger, and when the tenant fails to make the necessary repairs and the lives and safety of people are imperiled by negligent inaction. In Justice Albin's view, the landlord here had the authority to enter the property to repair any dangerous condition of which it was aware but, given the transient condition of the ice and snow in the driveway, had no practicable way to know that the tenant would not clear the driveway in a timely way and therefore no reasonable opportunity to remedy the situation.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion. JUSTICE ALBIN, concurring in the judgment and dissenting in part, filed a separate opinion.**

SUPREME COURT OF NEW JERSEY

A-53 September Term 2018

081969

Baldwin Shields and
Tricia Shields, his wife,

Plaintiffs-Respondents,

v.

Ramslee Motors,

Defendant,

and

608 Tonnelle Avenue, LLC,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 7, 2019 | January 23, 2020 |

Michael S. Savett argued the cause for appellant (Clark &
Fox, attorneys; Michael R. Fox and Patrick J. Reilly, III,
on the briefs).

Kristian A. Krause argued the cause for respondents
(Goldstein, Ballen, O'Rourke & Wildstein, attorneys;
Kristian A. Krause, on the brief).

1

Ronald B. Grayzel submitted a brief on behalf of amicus curiae New Jersey Association of Justice (Levinson Axelrod, attorneys).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

This case calls on the Court to determine whether the owner of a commercial property owes its tenant's invitee a duty to clear snow and ice from the property's driveway while the property is in the sole possession and control of the tenant.

Plaintiff Baldwin Shields was delivering a letter at 608 Tonnelle Avenue, Jersey City, when he slipped on ice and fell on the driveway. At the time, 608 Tonnelle Avenue was occupied by a commercial tenant, Ramslee Motors, a used car dealership. The lease agreement between the landlord and Ramslee Motors stated that Ramslee Motors was responsible for maintaining the property as if it were the "de facto owner."

The trial court found that the landlord was not responsible for removing snow and ice from the property and granted the landlord's motion for summary judgment. The Appellate Division disagreed. It found that the lease was silent as to who was responsible for snow and ice removal from the driveway and determined that, in any case, the landlord owed the same non-delegable duty to

2

maintain the driveway that it owed with respect to the sidewalks abutting the leased property.

We disagree with those determinations. The lease agreement between Ramslee Motors and the landlord directly addressed the issue of responsibility for maintenance of the property, which includes removal of snow and ice. That duty rested solely with Ramslee Motors, whether based on the lease or common law. Ramslee Motors retained complete control over the premises where plaintiff fell and was exclusively responsible for plaintiff's injuries. Therefore, we reverse the judgment of the Appellate Division and reinstate the trial court's grant of summary judgment.

I.

A.

On February 6, 2014, plaintiff, a Federal Express driver, delivered an envelope to Ramslee Motors, a used car dealership. After delivering the envelope, plaintiff slipped and fell on snow and ice on the driveway leading back to the sidewalk. Ramslee Motors parked cars for sale on that driveway, which is adjacent to the public sidewalk but separated from the sidewalk by a fence. As a result of his fall, plaintiff suffered injuries which he alleges continue to cause him pain and limit his activities.

3

Ramslee Motors leased the property for its dealership from 608 Tonnelle Avenue, LLC ("the landlord"). The lease agreement described the parties' responsibilities with respect to maintenance and repair as follows:

> Section 3.03. TENANT shall maintain the leased premises and building, structures, fixtures and improvements now or hereafter located thereon or in or on the easements in compliance with all laws and requirements of all governmental authorities applicable thereto and to the use thereof.
>
> Section 3.04. All parties agree that the premises have been inspected by TENANT prior to taking possession of the premises and accepts same in "AS IS" condition thereafter, and during TENANT'S use and occupancy of the premises TENANT shall be solely responsible for the maintenance and repair of the land and any structure placed on the premises at any time and from time to time during the lease, as if TENANT were the de facto owner of the leased premises.

The lease agreement also addressed the circumstances in which the landlord was permitted to enter the property:

> Section 11.03. TENANT agrees to permit LANDLORD and the authorized representatives of LANDLORD and of the holder of any fee mortgage to enter the leased premises or the building on one day notice, for the purpose of inspecting the same or exhibiting the same to prospective purchasers of the leased premises or to exhibit the same to persons wishing to rent such premises and building at any time within the year prior to the termination of this Lease. LANDLORD shall have the right to enter onto the leased premises at any time in the event of an emergency.

4

Section 2L.01 [sic]. The TENANT agrees that the LANDLORD and the LANDLORD'S agents, employees, or other representatives, shall have the right to enter into and upon the said premises or any part thereof, at all reasonable hours, for the purpose of examining the same or making such repairs or alterations therein as may be necessary for the safety and preservation thereof. This article shall not be deemed to be a covenant by the LANDLORD nor be construed to create an obligation on the part of the LANDLORD to make such inspection or repairs.

The owner of Ramslee Motors testified that he was responsible for clearing snow and ice at the property. He maintained equipment at the property in order to discharge that responsibility including salt and snow shovels. Further, the tenant's owner had removed snow and ice from the property the day before the incident, as confirmed by security camera footage from the property.

## B.

Plaintiff filed a complaint against Ramslee Motors and the landlord, which his wife joined per quod, alleging that their negligence was the cause of plaintiff's injuries. Plaintiff settled with Ramslee Motors and a stipulation of dismissal was entered. The landlord moved for summary judgment, and the trial court granted its motion. In doing so, the trial court found that the lease agreement placed responsibility for maintenance of the property on Ramslee Motors and that the duty to clear snow and ice is delegable, noting that there

5

were no public policy concerns because plaintiff was able to recover from another party.

The Appellate Division reversed the trial court's grant of summary judgment and remanded the matter. The court found that the lease was silent as to who was responsible for snow and ice removal. Then, finding that there was "no legal or public policy distinction between a sidewalk and an open driveway used with regularity," the Appellate Division held that the landlord had a non-delegable duty to "ensure that the driveway abutting the sidewalk was clear of snow and ice."

We granted the landlord's petition for certification. 236 N.J. 566 (2019). We also granted the motion of the New Jersey Association of Justice (NJAJ) to participate as amicus curiae.

## II.

The landlord maintains that, both under the lease and the common law, it is not responsible for clearing snow and ice from the property. The landlord emphasizes that its lease placed the responsibility for maintenance on the tenant, which includes the removal of snow and ice. Further, the landlord argues that the law places the general responsibility for removing snow and ice from the property on the tenant as well. The landlord contends that the exception to that common law principle for public sidewalks abutting the

6

property should not be extended to a driveway and that a commercial tenant with exclusive control over the property is rightly responsible for maintaining the property.

In response, plaintiff argues that the lease was ambiguous as to which entity is responsible for clearing snow and ice because the issue is not specifically addressed. Plaintiff contends that, in light of that ambiguity, the Appellate Division was correct in applying the factors set forth in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993), in considering where the duty of care should lie. Plaintiff further reasons that the justification for sidewalk liability applies equally to the driveway in this case, and it is thus appropriate to hold the landlord responsible for the removal of snow and ice.

The NJAJ echoes plaintiff's arguments and adds that the Hopkins factors dictate that responsibility belongs with the landlord.

III.

A.

When reviewing a grant of summary judgment, this Court applies the same standard as the trial court and considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the

7

alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c).

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). The key issues in this case are questions of law, see Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (interpretation of contract is question of law); see also Robinson, 217 N.J. at 208 (whether duty of care is owed is question of law), and thus appropriately reviewed on summary judgment, see Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (noting that "[p]urely legal questions" are "particularly suited for summary judgment").

The issue before us is whether New Jersey law imposes a non-delegable duty on commercial landlords to maintain the demised premises free of snow and ice. To answer that question, we first consider whether the duty was delegated and then look to whether it is non-delegable.

B.

The landlord argues that the lease's provision that "TENANT shall maintain the leased premises" encompassed and delegated the duty of snow and ice removal from the driveway to the tenant. We agree.

8

The definition of "maintain" is "[t]o care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep." Black's Law Dictionary 1142 (11th ed. 2019). Further, "maintenance" is defined as "[t]he care and work put into property to keep it operating and productive; general repair or upkeep." Ibid.

Courts have regularly found snow and ice removal to fall within those definitions. For example, in Township of White v. Castle Ridge Development Corp., the Appellate Division held that the definitions of "maintenance" and "maintain" "inherently include winter maintenance because the removal of snow and ice is necessary to keep [the street] operating and productive." 419 N.J. Super. 68, 76 (App. Div. 2011) (quotation marks omitted). And in Mirza v. Filmore Corp., we expressly held that "maintenance" of a public sidewalk includes the removal of snow and ice. 92 N.J. 390, 400 (1983).

The lease in this case was clear as to which party is responsible for maintenance of the premises. The parties agreed to place that responsibility solely on the tenant; the lease provided that the tenant was "responsible for the maintenance and repair of the land . . . as if [it] were the de facto owner of the leased premises." We conclude that "maintenance" includes the responsibility to remove snow and ice based on the plain meaning of that term.

9

Removal of snow and ice is clearly "general upkeep," which is necessary to keep the property "operating and productive."

The provision through which the landlord retained the right to enter the property without notice for the purpose of making repairs "necessary for the safety and preservation of the" property does not change our view. First, the lease specifically stated that the right to enter did not create "an obligation on the part of the Landlord to make such repairs." Second, as this Court held over sixty years ago, a reservation of a right to enter is not the same as a covenant to make repairs; rather, the "right or opportunity to enter the leased premises to perform the covenant [to repair] is, of course, something else, since the basis of liability is negligence." Michaels v. Brookchester, Inc., 26 N.J. 379, 385 (1958). Since that decision, New Jersey courts have distinguished between the right to enter and a covenant to repair. See, e.g., McBride v. Port Auth. of N.Y. & N.J., 295 N.J. Super. 521, 525 (App. Div. 1996). In light of that distinction, "plaintiff['s] thesis that a commercial landlord should be held responsible to a tenant's employee injured on the leased premises because it reserved the right to enter the leased premises to perform repairs is inconsistent with the law of this State." Ibid.

In sum, there is no ambiguity in the lease regarding the responsibility for snow and ice removal. That responsibility falls on the tenant.

C.

Finding that the lease delegated the responsibility to clear ice and snow to the tenant, we next consider whether or not this duty is one that could be delegated.

1.

We first consider the Appellate Division's determination that the private driveway here is sufficiently analogous to a public sidewalk to extend the non-delegable duty to clear sidewalks to the driveway.

In Stewart v. 104 Wallace St., Inc., this Court held that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." 87 N.J. 146, 157 (1981). In so holding, we overturned a longstanding rule placing responsibility for the maintenance of sidewalks on the government. Id. at 153-54. We set aside that rule, which was the "product of early English common law," based on its obvious unfairness. Id. at 154-55. We explained that the rule "left without recourse many innocent parties who suffered serious injuries because of sidewalk defects," id. at 155 (quoting Krug v. Wanner, 28 N.J. 174, 180 (1958), and gave "abutting property owners no incentive to repair deteriorated sidewalks," ibid.

In Mirza, we extended the duty to maintain sidewalks recognized in Stewart to include the removal of snow and ice, 92 N.J. at 400, and, in Vasquez v. Mansol Realty Associates, Inc., the Appellate Division declared that duty non-delegable, meaning it cannot be allocated to a tenant via a lease or contract. 280 N.J. Super. 234, 238 (App. Div. 1995).

The Appellate Division determined that Vasquez governs here, reasoning that the driveway was not distinct from the sidewalk and that the same non-delegable duty should therefore apply. We do not agree. The duty to maintain the driveway was never the government's -- it was always a private duty, with the potential of private recovery; the logic that led to the imposition of the duty vis-à-vis sidewalks does not apply to private property. Nor do the physical characteristics of the property support the appellate court's conclusion: the driveway is separated from the sidewalk by a gate and cannot therefore be readily accessed by passers-by when not expressly opened by Ramslee Motors. In fact, the Vasquez panel itself suggested that the duty it prescribed would not apply under the circumstances presented here when it stated that

> [t]his is not a situation where the owner has vested a tenant with exclusive possession and no longer has the power of entry into the premises to make repairs. In such case, to hold the owner liable for injuries to a passerby due to a condition of disrepair over which it has relinquished access is unfair.

[Id. at 237.]

Here, the landlord has vested the tenant with exclusive possession. In this case, it would be "unfair," as the Vasquez panel held, to hold the landlord responsible for "a condition of disrepair over which it had relinquished access." See ibid.

2.

Having found that the non-delegable duty to remove snow and ice from a sidewalk does not apply here, we consider whether the question of control favors a different outcome.

In Michaels, we began by noting that "[h]istorically a lease was viewed as a sale of an interest in land." 26 N.J. at 382. As such, the landlord was not responsible for maintenance of the premises. Ibid. Over time, however, exceptions to that principle developed. Most important to this case is the exception that "the landlord owes a duty of reasonable care with respect to the portions of a building which are not demised and remain in the landlord's control." Ibid. (emphasis added).

Recently, in J.H. v. R&M Tagliareni, LLC, this Court emphasized the importance of control in imposing a duty on a landlord, finding that "[a] landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which

13

the landlord <u>retains control</u>."  239 N.J. 198, 218 (2019) (alteration in original) (quoting <u>Scully v. Fitzgerald</u>, 179 N.J. 114, 121-22 (2004)).  That view is also reflected in the Restatement.  <u>Restatement (Second) of Torts</u> § 360 (Am. Law Inst. 1965) (providing that, under certain circumstances, "[a] possessor of land who leases a part thereof and <u>retains in his own control</u> any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land" (emphasis added)).

Here, there is no doubt that Ramslee Motors, not the landlord, controlled the driveway where plaintiff fell based both on relevant provisions in the lease and on the physical characteristics of the property.  Several provisions of the lease stated that Ramslee Motors was solely responsible for the demised property.  Ramslee Motors' actions also show an understanding that it was solely responsible for maintaining the property, particularly with respect to snow and ice removal.  The owner of Ramslee Motors stated that this was part of his responsibility in maintaining the property and that he had fulfilled this responsibility in the past.  Indeed, the record reveals that the owner of Ramslee Motors had cleared the driveway of snow on the eve of the incident.  The layout of the driveway reinforces the language of the lease:  as noted above, the driveway is separated from the sidewalk by a fence, which can be closed by Ramslee Motors to preclude public access.  And Ramslee Motors used the

14

driveway as part of its business to display the cars it offered for sale. In short, we find the undisputed evidence in the record shows that the landlord did not enjoy the sort of control over the subject driveway that would give rise to a duty of care.

3.

Plaintiff contends that the element of control is insufficient to determine whether or not the landlord owed a non-delegable duty of care to remove snow and ice, and argues that we should instead apply the test expounded in Hopkins. In Hopkins, we departed from the traditional, categorical approach to liability based on the status of the plaintiff and reasoned that "[w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." 132 N.J. at 439. We provided four factors to consider in making this inquiry, now referred to as the "Hopkins factors" -- "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. On the facts of this case, we reach the same result by application of the Hopkins factors that we did considering control.

15

First, we consider the relationship between the parties. In <u>Hopkins</u>, the parties were realtors and a potential purchaser of a home who attended an open house. In our analysis, we recognized the potential purchaser's "cognizable relationship with the broker." 132 N.J. at 440. Explaining that relationship, we specified that it "confers certain specific benefits on the broker and creates expectations on the part of the customer with respect to the broker's professional services." <u>Id.</u> at 441. By contrast, the landlord here had no relationship with plaintiff. Ramslee Motors ran a business on the property and all visitors to that business were the invitees of Ramslee Motors. The landlord had no knowledge of who visited the property and offered no services to them. Visitors had no reason to know that Ramslee Motors was not itself the owner of the property. The first <u>Hopkins</u> factor does not favor the imposition of a duty.

Second, we consider the nature of the attendant risk. "This aspect of the inquiry focuses the Court on the issue of whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden of preventing the harm upon the defendant." <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 296 (2012). Although hazards posed by winter weather are generally readily foreseeable, they are also transient. It would not be fair to place responsibility for removal of snow and ice on a commercial landlord that lacks

16

control over the property. Fairness dictates that Ramslee Motors, with control over the driveway, and the tools on hand to eliminate the risk, should be held solely responsible for the safety of its invitees. The second Hopkins factor thus favors Ramslee Motors.

Third, "the opportunity and ability to exercise care" analysis is similar to our analysis of control. In Hopkins, "the Court articulated workable guidelines by which realtors could minimize the risk of harm." Id. at 297. Further, we "note[d] that what precautions are reasonable depends in part on the practicability of preventing the harm." Hopkins, 132 N.J. at 443. It would be impractical to require the landlord here to prevent the harm accompanying temporarily slippery conditions caused by weather on property that it does not control. The landlord does not maintain a presence on the property and does not have access to information about the condition of the property. By contrast, the tenant kept tools for resolving the problem and regularly did so. The third Hopkins factor thus favors a determination that there is no duty.

Lastly, we consider the public interest in the proposed solution. Holding a landlord liable for snow and ice on demised property would not serve any public policy interest. There is no concern that plaintiff is left without redress; he can recover from Ramslee Motors. In short, an analysis of the Hopkins factors against the factual backdrop of this case leads to the conclusion that

17

fairness precludes the landlord's liability for plaintiff's injuries -- just as our application of the classic control-based liability analysis specific to the landlord-tenant context dictates that, in fairness, the entity with control over the property is the entity that should be held responsible. We decline to hold the landlord responsible for property over which it had relinquished control.

IV.

We reverse the judgment of the Appellate Division and reinstate the trial court's grant of summary judgment.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion. JUSTICE ALBIN, concurring in the judgment and dissenting in part, filed a separate opinion.

Baldwin Shields and
Tricia Shields, his wife,

Plaintiffs-Respondents,

v.

Ramslee Motors,

Defendant,

and

608 Tonnelle Avenue, LLC,

Defendant-Appellant.

JUSTICE ALBIN, concurring in the judgment and dissenting in part.

I concur with the majority that, based on the summary-judgment record, defendant 608 Tonnelle Avenue, LLC (the landlord) had no common law duty to clear the commercial tenant's driveway of the <u>transient</u> condition of snow and ice, which caused plaintiff Baldwin Shields to slip and fall. Given the facts here, the tenant had the duty and sole responsibility to render the driveway safe.

Unlike the majority, however, I believe this landlord has a duty to make reasonable efforts to repair a dangerous condition on the property that it knows or should know places at risk the lives and safety of people visiting or

1

frequenting the premises. Imposing this common law duty on the landlord is both fair and in accord with public policy. First, in the lease, the landlord reserved the unqualified right to enter the property to make safety repairs and therefore did not cede exclusive control of the property to the tenant. Second, the landlord is profiting from the lease of the premises. Ownership of land over which a landlord retains sufficient control to ensure the safety of the public carries certain responsibilities that cannot be cast aside.

Accordingly, I disagree with any seeming pronouncement that absolves the landlord of the duty to make reasonable efforts to repair a dangerous condition on the property when the landlord knows or should know of the danger, when the landlord retains authority to remove the danger, and when the tenant fails to make the necessary repairs and the lives and safety of people are imperiled by negligent inaction.

I.

The lease in this case does not support the majority's assertion that "Ramslee Motors retained complete control over the premises where plaintiff fell." See ante at ___ (slip op. at 3). Indeed, the lease provides that the landlord and its agents "have the right to enter . . . the said premises . . . at all reasonable hours, for the purpose of examining the same or making such repairs or alterations therein as may be necessary for the safety and

2

preservation thereof." In addition, the landlord reserved "the right to enter onto the leased premises <u>at any time</u> in the event of an emergency." (emphasis added). Those provisions make clear that the landlord did not cede <u>exclusive</u> control over the property to the tenant.

The landlord attempts to absolve itself of any legal duty to make safety repairs by pointing out certain lease terms: (1) the tenant is "solely responsible for the maintenance and repair of the land" and structures on it, and (2) the landlord's reservation of the right to inspect and repair the property does not "create an obligation on the part of the [landlord] to make such inspection or repairs." But parties to a lease cannot contract away a common law duty intended to benefit the public. <u>See</u> <u>Henningsen v. Bloomfield Motors, Inc.</u>, 32 N.J. 358, 403-04 (1960) (stating that courts "do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way").

A landlord that retains sufficient control over its property to make safety repairs should not be able to extinguish its common law duty to exercise reasonable care to guard against foreseeable dangers. That is because a landlord's duty to exercise reasonable care is a question of law that a court decides. <u>See</u> <u>Jerkins v. Anderson</u>, 191 N.J. 285, 294 (2007). Whether to impose a common law duty depends on an analysis of such factors as "the

3

relationship of the parties," the foreseeability and nature of the risk of harm, "the opportunity and ability to exercise care" to avoid the harm, "the public interest," and ultimately "notions of fairness" and "common sense." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 443 (1993). Generally, a landlord's duty to repair a dangerous condition on its property "arises when the harm is foreseeable and the landlord has sufficient control to prevent it." See Scully v. Fitzgerald, 179 N.J. 114, 121-23 (2004).

Given the landlord's right to enter its property to make safety repairs, the Hopkins factors certainly should give rise to a common law duty under the appropriate circumstances. For example, if the landlord in this case had reasonable notice of a developing sinkhole in the driveway or of a roof overhang ready to collapse on an interior walkway, threatening the lives and safety of visitors, surely common sense and notions of fairness would dictate that the landlord has a duty to act in the absence of the tenant making the necessary repairs.

To the extent that the case law of this Court, more than a half-century old, suggests that the landlord can evade a duty of care because a lease divests it of "control" of the property, even when it has reserved the right to enter its premises to make safety repairs, see Michaels v. Brookchester, Inc., 26 N.J. 379, 384-85 (1958), the time has come to adopt a more progressive approach

4

to our common law.  Rigid and legalistic definitions of the term "control" should give way to the reality that the landlord has authority under this lease to exercise control.  However "control" is defined does not diminish the fact that the landlord has the right to enter the premises to make safety repairs.  The common sense of the situation should dictate whether the landlord owes a duty to act with reasonable care toward the public.

Some jurisdictions have held that when a landlord retains a right of entry on leased property to make repairs, the landlord owes a duty of care to the public.  See, e.g., Panaroni v. Johnson, 256 A.2d 246, 252 (Conn. 1969) (finding "retention of control" where the lease did not expressly resolve the issue of control and there was "evidence that the lessor was granted general access to the apartment for the purpose of inspection and repair"); Adamson v. Port of Bellingham, 438 P.3d 522, 526 (Wash. 2019) (noting that although landowner may not be held liable for injuries in some cases when it "gives exclusive control of a property over to a lessee," when the "landlord reserves a duty to repair the premises, the landlord is liable for its own negligence if it fails to do so, even if both the landlord and the lessee know of the dangerous condition").

Other jurisdictions have rejected "control" of property as a decisive factor altogether and hold that landlords simply have a duty to exercise

5

reasonable care under the circumstances. See e.g., <u>Stephens v. Stearns</u>, 678 P.2d 41, 50 (Idaho 1984) (deciding that "the common-law rule and its exceptions" are no longer relevant and that "questions of hidden danger, public use, control, and duty to repair . . . will now be relevant only inasmuch as they pertain to the elements of negligence, such as foreseeability and unreasonableness of the risk"); <u>Sargent v. Ross</u>, 308 A.2d 528, 534 (N.H. 1973) (rejecting the doctrine of landlord immunity and holding that "[a] landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk"); <u>Miller v. David Grace, Inc.</u>, 212 P.3d 1223, 1230 (Okla. 2009) (rejecting the doctrine of landlord immunity and imposing on landlords a general duty of care that "requires a landlord to act reasonably when the landlord knew or reasonably should have known of the defective condition and had a reasonable opportunity to make repairs"); <u>Favreau v. Miller</u>, 591 A.2d 68, 72 (Vt. 1991) (holding that "landlords too may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain 'control' of the dangerous condition"); <u>Pagelsdorf v. Safeco Ins. Co. of Am.</u>, 284 N.W.2d 55, 61 (Wis. 1979) (holding that "a landlord owes his tenant or anyone on the premises with the tenant's consent a duty to exercise ordinary

6

care" and that "notice of the defect, its obviousness, control of the premises, and so forth are all relevant only insofar as they bear on the ultimate question" of whether the landlord exercised "ordinary care in the maintenance of the premises under all the circumstances").

The right of a landlord to make repairs on its property under the terms of a lease should implicate the landlord's duty to exercise reasonable care. If a landlord has retained authority to enter the premises to make safety repairs that would prevent a person from being seriously harmed, it should have a duty to do so if reasonable under the totality of the circumstances.

I disagree with the majority that imposing on the landlord the duty to remove even snow and ice on a commercial driveway -- a condition that could subsist for a period of weeks if not more -- "would not serve any public policy interest." See ante at ___ (slip op. at 17). Although this plaintiff may have secured redress from the tenant, as the majority notes, the next plaintiff may not be so fortunate. See ante at ___ (slip op. at 17). After all, the tenant could be insolvent or underinsured. Moreover, one of the purposes of tort law is to give a party an incentive to prevent accidents from happening in the first place. See Hopkins, 132 N.J. at 448. It is better that a party exercise reasonable care to avoid causing injury than that an injured party be left to seek recovery for a preventable accident.

7

II.

Here, although the landlord had the authority to enter the property to repair any dangerous condition of which it was aware, given the transient condition of the ice and snow in the driveway in this case, the landlord had no practicable way to know that the tenant would not clear the driveway in a timely way and therefore no reasonable opportunity to remedy the situation.

I therefore concur in the judgment.